Pearline Cathy ARMENDARIZ, Micha Miracle and B ·& B Vending & Music Company, d/b/a B & B Vending Company, Appellants,

v.

Joe B. MORA, d/b/a Central Vending Company, Appellee.

No. 6550.

Court of Civil Appeals of Texas, El Paso.

June 8, 1977.

Rehearing Denied July 6, 1977.

Brewster, Steinberger & Mayhall, Jack L. Brewster, El Paso, for appellants.

Charles E. Anderson, El Paso, for appellee.

## OPINION

WARD, Justice.

This is a tort action for damages arising from the alleged intentional interference

with the Plaintiff's contractual rights where the Plaintiff had the exclusive right to operate his coin-operated machines at that establishment known as "The Brass Asp." The Defendants were the lessee-bar owner who executed the contract with the Plaintiff, the successor-lessee of the premises, and the Plaintiff's competitor who placed his own machines in the premises under contract with the successor-lessee. Trial was to a jury on special issues which determined there had been a wilful and intentional interference with the performance of the contract participated in by all of the Defendants. Based on the verdict, judgment was entered which awarded the Plaintiff both actual and exemplary damages. The three Defendants have appealed and as modified we affirm.

S & H Realty Company was the owner of the real estate in question, and on February 28, 1972, entered into a written lease of the business premises with the Defendant, Cathy Armendariz, for a period of two years, the lease containing an option to renew for an additional period of three years. Cathy permitted the installation of certain coin-operated machines in the bar by a third party, and on June 6, 1972, these machines together with the concession under which they were operated were purchased from the then owner by the Plaintiff, Joe Mora, who was doing business under the name of Central Vending Company. According to Mora, Cathy participated to the extent that she witnessed this transaction and saw Mora purchase the machines for $1,000.00. She also at that time executed the written exclusive concession lease which became the subject of this suit and which provided that for a period of five years, Mora was granted the exclusive right to place coin-operated amusement and vending machines in the premises, with the receipts from the operation of the machines being equally divided between the parties. These two parties thereafter operated under this agreement until the events which brought about its breach in March, 1974.

On October 31, 1973, Cathy Armendariz entered into a written contract of sale with the Defendant, Micha Miracle, to sell to her the assets and business of The Brass Asp at an agreed price of $22,000.00 plus inventory, the sale being conditioned that the purchaser, Micha Miracle, secure a liquor license by March, 1974, that Cathy Armendariz execute the option to renew the lease of the premises for the three-year period beginning March, 1974, and that that renewal lease be then assigned to the purchaser. At that time, the Defendant, B & B Vending Company, which was in the coin-operated machine business, had agreed with Micha Miracle that if she purchased the business, it would lend her $10,000.00 and in turn would place its machines in the premises. By March, 1974, Micha Miracle had secured her liquor license, and the option to renew the lease had been exercised by Cathy Armendariz. According to the Plaintiff's version, at that time the Defendants realized that they would not be able to remove the Plaintiff's machines without a fight. In any event, they decided not to proceed under the assignment of the original lease but would obtain a new lease between the owner and Miracle. They were successful and on March 13th, the owner of the building, S & H Realty Company, released the Defendant, Cathy Armendariz, from the renewal lease and in turn executed an entirely new lease of the premises to Micha Miracle for a term of three years, the terms of this new lease being guaranteed by the Defendant, B & B Vending Company. On March 7th, the two Defendants, Micha Miracle and B & B Vending Company, entered into a location agreement which provided that B & B Vending Company would have the exclusive right to install and operate its coin machines on the premises for a term of six years. It was only then that the Defendants first informed Mora of the events and called upon the Plaintiff to remove his machines from the premises. Joe Mora instituted suit against the three Defendants seeking temporary and permanent injunctive relief to protect his interests under his exclusive concession lease which still had three years to run. The trial Court granted the temporary injunction, this Court of Civ-

il Appeals affirmed, and the Supreme Court reversed and dissolved the temporary injunction. *Armendariz v. Mora,* 526 S.W.2d 542 (Tex.1975).

The Plaintiff then amended his pleadings, dropped his request for injunctive relief, and sued for damages arising from the tortious interference with his contractual rights. As stated, the case proceeded to trial before a jury, which by its answers to special issues made the following findings: (1) that one or more of the Defendants knew, or in the exercise of ordinary care should have known, of the existence of the exclusive concession lease between Mora and Mrs. Armendariz before Micha Miracle bought The Brass Asp; (2) that one or more of the Defendants interfered with the operation of Mora's machines at the location; (3) that the interference was wilful and intentional; (4) that the interference was a proximate cause of a monetary loss to the Plaintiff; (5) that each of the three Defendants interfered with the operation of Mora's machines at the location; (6) that the reasonable compensation to Mr. Mora for his financial loss by reason of the interference was the sum of $3,250.00 for loss of income to the date of trial, $4,750.00 for future loss of income, and $25.00 loss of equipment from the machines in question; (7) that the three Defendants acted with malice in their interference; (8) that exemplary damages should be assessed; and (9) that $7,000.00 was assessed as exemplary damages. Based upon the verdict of the jury, judgment was entered that the Plaintiff have recovery for $8,025.00 actual damages and $7,000.00 exemplary damages.

By an overly broad and multifarious first point, the Defendants-Appellants complain that no cause of action exists against them in that the Plaintiff had no valid contract which could be interfered with or rights that could be invaded, and that the Plaintiff failed to both prove and secure jury findings that any interference upon the part of the Defendants was "without just cause or excuse." Defendants first insist that the Plaintiff's exclusive concession lease was invalid as entered into in direct violation of the terms of the real estate

lease between S & H Realty Company and Cathy Armendariz, which prohibited subleasing without the landlord's written consent, and the subleasing was also contrary to the prohibition contained in Article 5237, Tex.Rev.Civ.Stat.Ann.

■ The general rule is that for there to be a right of action against one for contractual interference, there must be in existence a valid contract subject to that interference. *Glenn v. Gidel,* 496 S.W.2d 692 (Tex.Civ.App.—Amarillo 1973, no writ). To maintain the action for interference with the contract, it must be established that (1) there was a contract subject to interference, (2) the act of interference was wilful and intentional, (3) such intentional act was a proximate cause of Plaintiff's damage, and (4) actual damage or loss occurred. Here the attack is that the first element was missing as there was no valid contract. The rule announced in *Clements v. Withers,* 437 S.W.2d 818 (Tex.1969), controls. There, the Court held that the unenforceability of the contract in question, because of its failure to meet the requirements of the Statute of Frauds, was no defense to an action for tortious interference with its performance. The fact that the landlord in the present case might complain and invalidate the agreement gave no right to third parties to interfere with the performance of the contract.

■ Regardless, it is our opinion that this contract is not within the prohibition of the lease or of the statute. No exclusive possession of any of the premises was granted to the Plaintiff thereby. It did not create a leasehold estate and was not a sublease. To that extent, we approve the holding in *Hancock v. Bradshaw,* 350 S.W.2d 955 (Tex.Civ.App.—Amarillo 1961, no writ). We do not follow that authority where it held that the three-year exclusive concession lease was a mere privilege revocable upon transfer to a new sublessee. While there has been no uniformity in upholding these exclusive concession agreements regarding coin-operated machines or in determining whether they are mere li-

censes or contracts, we think the better view recognizes them as valid contracts between the parties where they are for a term and are supported by a valuable consideration. *Vass v. Fisher,* 405 S.W.2d 866 (Tex. Civ.App.—Houston 1966, no writ). See Annot. 53 A.L.R.3d 471 (1973). These contracts have become a fixture of everyday life and have been the subject of attempted regulation in this State. Art. 13.17, Taxation—General, Tex.Rev.Civ.Stat.Ann.; *Taylor v. State,* 513 S.W.2d 549 (Tex.Cr.App. 1974). We hold there was a valid contract which could be the subject of the tort action.

■ The complaint made by the Defendants that the Plaintiff failed to prove and secure jury findings that any interference upon the part of the Defendants was "without just cause or excuse" is without merit. *Tippett v. Hart,* 497 S.W.2d 606 (Tex.Civ. App.—Amarillo), writ ref'd n. r. e., 501 S.W.2d 874 (Tex.1973). See Comment 28 Baylor L.Rev. 687 at 689 and 696 (1976). The four elements discussed above establish a prima facie case of interference with contract, and it is then incumbent upon the Defendant to defeat the action by showing that his act was either justified or privileged. The Defendants have misplaced the burden of proof.

■ Also under the first point, the Defendants make a "no evidence" argument that there was no showing that the claimed interference with the contract was wilful and intentional on the part of the three Defendants. Interference with a contract is an intentional tort and it is essential to the establishment of the cause of action that this element of wilful and intentional interference be established. *Herider Farms-El Paso, Inc. v. Criswell,* 519 S.W.2d 473 at 476 (Tex.Civ.App.—El Paso 1975, writ ref'd n. r. e.); *Tippett v. Hart,* supra at 611. The evidence that the three Defendants wilfully and intentionally interfered with the contract rights of the Plaintiff will under this point be viewed in the light most favorable in support of the jury findings, and only the evidence and inferences arising which support those findings will be

considered, and the evidence and inferences contrary to the findings will be rejected. The Defendant, Cathy Armendariz, knew of the contract as she executed it in June, 1972, and in October, 1973, when she entered into the contract of sale she knew she would then breach her contract with the Plaintiff, Mora. The Defendant, B & B Vending Company, at all times was represented by Gilbert Seelmeyer. He had been in the coin-operated machines business for many years, was a competitor of the Plaintiff, knew the Plaintiff and knew that he operated under written contracts. Seelmeyer had also been a member of the Texas Vending Machine Commission, knew that the law required a written agreement between the machine and bar owners, and, according to Mora, was fully aware of Mora's contract and of its terms before the final sale took place. Seelmeyer was the one that found Miracle and introduced her to Cathy Armendariz, and had agreed to lend her $10,000.00 if she would agree that his machines be put into the bar. Cathy explained to Miracle how the machines operated and how the profits on the concession were handled. Also, according to Cathy, Seelmeyer explained the operation to her. According to Mora's version, all three Defendants were on notice of his contract rights before the sale was finally consummated, and Seelmeyer then informed him that regardless of his contract, the parties would all proceed under the new arrangement and that Mora's machines were to be removed from the bar. We find the evidence legally sufficient to support a jury finding that there was a wilful and intentional interference with the Plaintiff's exclusive concession lease by each of the Defendants. The first point is overruled.

■ By their second point, the Defendants complain of the form of the submission of Special Issue No. 1 in that it instructed the jury that the concession lease was a valid contract. The issue was to the following effect:

"From a preponderance of the evidence, do you find that one or more of the Defendants knew, or in the exercise

of ordinary care should have known, of the existence of the 'exclusive concession lease' between Mr. Mora and Mrs. Armendariz \* \* \* before Mrs. Miracle bought the Brass Asp?"

There is no merit to the complaint. The Court merely inquired as to the existence of the knowledge of the Defendants or their knowledge of facts sufficient to put them upon inquiry of the existence of the concession lease. Further, as previously discussed, the contract was valid as far as the Defendants were concerned.

█ The Defendants further complain of the issue as they argue that the inquiry should have been whether the Defendants had "actual knowledge" of the contract and not whether the Defendants "knew or should have known of the contract." The rule is that the interfering party must have had actual knowledge of the existence of the contract and of the plaintiff's interest or, at least, knowledge of such facts and circumstances that would lead a reasonable man to believe in their existence. *Kelly v. Galveston County,* 520 S.W.2d 507 at 513 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *Tippett v. Hart,* supra at 611; Comment 28 Baylor L.Rev. at 692. The point is overruled.

By their next three points, the Defendants object to the forms of submission of Special Issues Nos. 2, 3, and 5 in the Court's Charge. The points are overruled as being without merit for reasons previously discussed.

█ The form of Special Issue No. 6 is the subject of the Defendants' next points. That issue inquired as to:

"What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate Mr. Mora for his financial loss, if any, occasioned, if it was by reason of the interference, if any, of one or more of the Defendants?"

The jury was then instructed that they could consider the following elements of damages:

"(a) Loss of income from the time that Mr. Mora's machines were disconnected until the present date.

\* \* \* \* \* \*

"(b) Loss of income which, in reasonable probability, Mr. Mora will lose in the future and after this date up to the 6th of June, 1977."

In connection with those two elements of damage, the jury was instructed that if Mora could have located the machines at another location, that the jury would not allow him any loss for such period of time that the machines could reasonably have been located elsewhere, either in the past or in the future. The measure of damages for tortious interference with contract is the same as for breach of contract, the Court attempting to put the Plaintiff in the same economic position he would have been in had the contract not been breached. *Prowse v. Whitehurst,* 313 S.W.2d 126 at 130 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.). Both the breaching party and the interfering party are jointly and severally liable for the actual damages incurred by the Plaintiff.

█ As we understand the Defendants, their main complaint was that an instruction should have been given to the jury in connection with the issue defining loss of income as a net profit which the Plaintiff might have realized. However, the Defendants failed to request in writing and tender to the trial Court a definition of the term "net profit," and a failure to submit a definition under the circumstances was not error. Tex.R.Civ.P. 279; *State v. Harrington,* 407 S.W.2d 467 (Tex.1966).

The other main objection by the Defendants was that the trial Court in the damage issues was instructing the jury that the contested concession lease was valid and effective until June 6, 1977. As previously discussed, the exclusive concession lease with Cathy Armendariz was effective until that time and the parties had no grounds to complain of any alleged invalidity. These points are overruled.

No error is reflected by the Defendants' point objecting to the form of the submission of 6(c) of the Court's Charge regarding

storage charges as the jury found no damage under that paragraph. Tex.R.Civ.P. 434.

By paragraph 6(d) of the Court's Charge, the inquiry was made as to what would compensate the Plaintiff for his financial loss by reason of loss of equipment from the machines in question. From our examination of the record, we have found no evidence which was introduced as to the value of any lost equipment on these machines that was caused by the Defendants. The amount of damages assessed was $25.00, and this will be eliminated.

The Defendants next present a multifarious point as to the submission of Special Issues Nos. 7, 8, and 9 which related to the finding of malice and the assessing of exemplary damages therefor, the Defendants first arguing that there was no evidence supporting their submission or the award of exemplary damages in this case. In any proper case in an action of interference with contract, exemplary damages are recoverable against the interfering party. As stated in *Clements v. Withers,* supra, actual malice is a necessary element to sustain an award of exemplary damages, and the Court defined actual malice as "ill-will, spite, evil motive, or purposing the injury of another." It was in this manner that the Court defined malice in the present case. *Kidd v. Hoggett,* 331 S.W.2d 515 (Tex.Civ. App.—San Antonio 1959, writ ref'd n. r. e.).

As suggested in *Clements v. Withers,* supra, the problem presented is the distinction between the intent on the part of the Defendants to contract favorably and profitably among themselves knowing that they were going to cause a breach of the Plaintiff's contract which would be a wrong and a basis for actual damages. Or, on the other hand, were the motives and purposes on the part of the Defendants those of acting with "ill-will, spite, evil motive, or purposing the injury of another." Gilbert Seelmeyer testified that in the past he had had trouble with the Plaintiff who had undercut him on two occasions and forced him to remove his machines from locations where he had first possession. From this, the jury could infer that Seelmeyer was actuated by spite and revenge. In view of this and the careful planning and the step-by-step manner in which the Defendants proceeded for a period of from six to eight months before they informed the Plaintiff a few days before the final closing that his machines would have to go, we find the evidence legally sufficient to justify the submission of the malice issue and of the exemplary damages in this case. The Defendants' point is overruled.

The Defendants finally complain of misconduct of the jury, their main assertion being that during the deliberation, the jury decided and argued that the exclusive concession lease was a binding contract. This argument, as previously discussed, was not an incorrect statement insofar as it applied to the relation between the Plaintiff and Cathy Armendariz. Even if it were, no misconduct is reflected. Even an incorrect statement would be an effort on the part of the jury to follow its own reasoning rather than applying the Court's Charge. A misinterpretation or misunderstanding of a court's charge is not misconduct. *Stephens County Museum, Inc. v. Swenson,* 517 S.W.2d 257 (Tex.1974). The argument made by one juror that the Appellant Miracle, being one of the Defendants, had to be held liable as a victim of circumstances or as a matter of blind justice at best would be faulty or illogical reasoning, which is not misconduct. *Griffith v. Hudspeth,* 378 S.W.2d 153 (Tex.Civ. App.—San Antonio 1964, no writ). Argument made by a juror that Miracle was not as innocent as she pretended was not error.

As to the balance of the misconduct which was alleged to have occurred, there is a denial by one or more of the jurors that any of the complained of statements were ever made. The burden to prove the occurrence of the overt act of misconduct was not sustained and the decision of the trial Court on the question is binding on this appeal. *Brawley v. Bowen,* 387 S.W.2d 383 (Tex.1965). The point is overruled.

The judgment of the trial Court is modified only to the extent that the sum of $25.00 is deducted from the amount of actual damages awarded by the trial Court. In all other respects, the judgment of the trial Court is affirmed.