**SANDARE CHEMICAL COMPANY, INC., Appellant,**

v.

**WAKO INTERNATIONAL, INC. d/b/a Diagnostic Corporation of America, et al., Appellee.**

**No. 2–90–012–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 20, 1991.

Johnny W. Richards II, P.C. and J.W. Richards II, N. Richland Hills, for appellant.

Brown, Herman, Scott, Dean & Miles and R. David Broiles, Douglas Austin–Weeks and Rickard & Ware and Michael L. Ware, Fort Worth, for appellee.

Before WEAVER, C.J., and HILL and MEYERS, JJ.

## OPINION

HILL, Justice.

Sandare Chemical Company, Inc. appeals from a judgment in favor of Nuclear Diagnostics, Inc. in the amount of $18,985 plus prejudgment interest. Sandare had brought an action against WAKO International, Inc., d/b/a Diagnostic Corporation of America, Mr. H.P. Henderson, Nuclear Diagnostics, Inc., and Axiom, Inc., seeking an injunction and damages in connection with the alleged improper use by the defendants of a product and certain confidential information relating to the product. Nuclear counterclaimed against Sandare, alleging tortious interference with its contractual relationship with WAKO and Henderson. In three points of error, Sandare contends that the evidence was insufficient, both factually and legally, to establish that Sandare's actions had proximately injured Nuclear, to establish that Nuclear had sustained any actual damage or loss, or to establish that Nuclear suffered damages that were definitely ascertainable at a fixed definite time.

We affirm because we hold that the evidence is sufficient to support the judgment in favor of Nuclear, including prejudgment interest.

In 1980 Sandare and WAKO entered into an agreement relating to the production of a medical diagnostic test. The following year, one day after WAKO made agreements with Nuclear that gave Nuclear certain rights to the test, Sandare unilaterally terminated its agreement with WAKO.

Sandare brought suit against WAKO, Nuclear and others seeking an injunction and damages, alleging breach of contract, infringement of its rights in the test, and a breach of a confidential relationship between it and WAKO. In a counterclaim, Nuclear alleged that it was damaged by Sandare's tortious interference with its contractual and business relationships with WAKO. Under the judgment of the court, all parties take nothing except for Nuclear, which was to recover from Sandare $18,-985.00 and prejudgment interest from January 31, 1982.

Sandare contends in point of error numbers one and two that the evidence was legally and factually insufficient to establish that its actions had proximately injured Nuclear and that the evidence was legally and factually insufficient to establish that Nuclear had suffered any actual damage or loss.

Sandare does not contest the trial court's finding that it tortiously interfered with the contractual and business relations of WAKO and Nuclear.

■ Under the evidence it is undisputed that Sandare's tortious interference with the contractual and business relationship between WAKO and Nuclear resulted in their not being able to pursue their plans to manufacture and market the test in question, while Sandare proceeded to do so. We find that such evidence is legally sufficient to support the trial court's implied finding that Nuclear and WAKO were injured as a result of Sandare's tortious interference. Considering all the evidence on this point, we find that the evidence is also factually sufficient to support the trial court's implied finding.

■ The real gist of Sandare's point of error is that Nuclear failed to prove the amount of any profit it lost as a result of the interference.

In order for us to consider Sandare's contention, we must conclude that the trial court, in support of its judgment, necessarily determined that Nuclear suffered lost profits in the amount of the judgment or, alternatively, that it might award recovery based upon the profits of Sandare. While, as argued by Sandare, there is no direct evidence establishing that Nuclear lost profits in the amount of the judgment, there is evidence to support an implied finding that WAKO's proportionate share of Sandare's profits subsequently derived from Sandare's manufacture and sale of the test would be in the amount of the judgment. It is undisputed that WAKO has assigned all of its rights in this matter to Nuclear.

■ An unjust enrichment measure of damages is appropriate for wilful interference with contractual relations, at least where the plaintiff's lost profits are not readily ascertainable. *National Merchandising Corp. v. Leyden,* 370 Mass. 425, 348 N.E.2d 771, 776 (1976); *see also Federal Sugar Refining Co. v. United States Sugar Equalization Board,* 268 F. 575, 582–83 (S.D.N.Y.1920); *Second National Bank v. Samuel & Sons,* 12 F.2d 963, 968 (2d Cir.), *cert. denied,* 273 U.S. 720, 47 S.Ct. 110, 71 L.Ed. 857 (1926); *Schechter v. Friedman,* 141 N.J.Eq. 318, 57 A.2d 251, 255 (Ct.Err. & App.1948); *Caskie v. Philadelphia Rapid Transit Co.,* 321 Pa. 157, 184 A. 17, 18 (1936); Palmer, *Law of Restitution,* sec. 2.6, pps. 80–81; Prosser & Keeton, *Law of Torts* sec. 129, p. 1004 (5th Ed.1984).

Because Nuclear and WAKO were injured as a result of Sandare's wilful tortious interference with their business and contractual relations, they were entitled to recover based upon an unjust enrichment theory of damages if their lost profits were not readily ascertainable. There was evidence that WAKO was not in good financial health either before or after the interference and that Nuclear suffered losses in sales and profits both before and after the interference. Additionally, there is evidence that Nuclear's sole shareholder, Dr.

Walter Digiulio, had health problems and died from cardiac arrest in 1986. The trial court may have determined that any lost profits suffered by WAKO or Nuclear were not readily ascertainable. Sandare does not attack any such implied finding.

Consequently, if the trial court found that Sandare wilfully tortiously interfered with the contractual and business relations of WAKO and Nuclear, found that the amount of any lost profits caused to them by the interference was not reasonably ascertainable, and further found that Sandare unjustly profited in the amount of the judgment, no finding by the trial court as to WAKO or Nuclear's lost profits would have been necessary to support its judgment. We may not, therefore, imply that the trial court made such a finding. To the extent that Sandare's points of error complain that there is no evidence or insufficient evidence to support such a finding, we find that they present nothing for review.

We also note that in a case of tortious interference with contractual relations, evidence of the defendant's profits may, when the plaintiff cannot show with certainty the profits it would have realized in the absence of the interference, constitute evidence of the plaintiff's lost profits. *See Ramona Manor Convalescent Hosp. v. Care Ent.*, 177 Cal.App.3d 1120, 225 Cal.Rptr. 120, 131 (Cal.App. 4 Dist.1986, rev. den.)

Sandare primarily relies on the cases of *Armendariz v. Mora*, 553 S.W.2d 400, 406 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.); *Marcus, Stowell & Beye Government Securities, Inc. v. Jefferson Investment Corporation*, 797 F.2d 227 (5th Cir. 1986); and *Davis v. West Community Hospital*, 755 F.2d 455, 466–67 (5th Cir.1985). Sandare also relies on Restatement (Second) of Torts sec. 774A (1979).

In *Armendariz*, the court stated the general rule that the measure of damages for tortious interference with contract is the same as for breach of contract, attempting to put the plaintiff in the same economic position he would have been in had the contract not been breached. *Armendariz*,

553 S.W.2d at 406. There was no discussion as to whether one could recover damages based on the defendant's profit where plaintiff's damages were not readily ascertainable.

*Marcus* is distinguishable because in that case the plaintiff's damages were readily ascertainable. The court specifically did not address what the measure of damages would be where the plaintiff's loss "could not be directly determined." *Marcus, Stowell & Beye Government Securities, Inc.*, 797 F.2d at 231, n. 5.

The case of *Davis* involved an action for tortious interference brought after a physician's staff privileges at a hospital were suspended. Due to the nature of the case the profits of the defendant were not in issue. The physician's income was higher the year of the suspension than it had been in the previous year. Consequently, the court held that he had failed to establish that he had been damaged.

The Restatement (Second) of Torts sec. 774A (1979) is a statement of the measure of damages generally applicable to tortious interference cases. It does not directly address the issue of whether one may recover the profits of the defendant in the event the plaintiff's lost profits are not readily ascertainable. If the absence of discussion concerning whether the defendant's profits may constitute the measure of damages when the plaintiff's lost profits are not readily ascertainable means that the *Restatement* has declined to adopt the rule as we have stated it, then we decline to adopt the *Restatement* section 774A as the measure of damages when the plaintiff's lost profit is not readily ascertainable because we find it not to be in accord with the authorities, which we find to support the better rule.

Sandare argues that this court has previously adopted section 774A as the measure of damages in tortious interference cases in *American Petrofina, Inc. v. PPG Industries, Inc.*, 679 S.W.2d 740, 759 (Tex. App.—Fort Worth 1984, dismissed by agreement) and *Boyles v. Thompson*, 585 S.W.2d 821, 831 (Tex.Civ.App.—Fort Worth 1979, no writ), and that it has also been

adopted by the Fourth District Court of Appeals in San Antonio in *Gonzalez v. Gutierrez*, 694 S.W.2d 384, 390 (Tex.App.—San Antonio 1985, no writ). We have examined all of these cases and find that although the court in each case did rely on the *Restatement* section 774A as the measure of damages, none of the cases related to an issue as to whether the plaintiff might recover the defendant's lost profits where his own lost profit is not readily ascertainable. We overrule points of error numbers one and two.

▮ Sandare contends in point of error number three that the trial court erred in rendering judgment against it for prejudgment interest because there was no evidence or, alternatively, insufficient evidence that Nuclear suffered damages that were definitely ascertainable at a fixed, definite time.

Sandare's contention that Nuclear's damages must have been definitely ascertainable at a fixed, definite time in order for Nuclear to be entitled to prejudgment interest appears to conflict with the holding of the Texas Supreme Court in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985). In that case the supreme court held that as a matter of law a plaintiff may recover prejudgment interest on damages that have accrued by the time of judgment, even though the claim had previously been unliquidated. *Id.* at 554. As we stated in *McCann v. Brown*, 725 S.W.2d 822, 826 (Tex.App.—Fort Worth 1987, no writ), "Although *Cavnar* involved an action for personal injury, its reasoning has been interpreted to extend to all types of suits." The cases cited by Sandare were all decided prior to the opinion in *Cavnar*. We overrule point of error number three.

The judgment is affirmed.