**AFFIRM; and Opinion Filed February 24, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01657-CV

**MARK PALLA, Appellant**

**V.**

**BIO-ONE, INC. AYDEMIR ARAPOGLU, AND TRANSTRADE, LLC, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-02222-A**

## OPINION

Before Justices Moseley, FitzGerald, and Fillmore
Opinion by Justice Fillmore

Appellant Mark Palla sued appellee Bio-One, Inc. for breach of contract and sued appellees Aydemir Arapoglu and Transtrade, LLC for tortious interference with an existing contract. A jury returned a verdict in favor of Palla. Palla filed a motion in the trial court to disregard a jury finding on damages relating to Palla's tortious interference with contract claim. The trial court overruled Palla's motion and entered a final judgment. Palla contends on appeal that the trial court erred by failing to apply the proper measure of damages for a tortious interference with contract claim. According to Palla, appellees are jointly and severally liable for the actual damages awarded by the jury on Palla's breach of contract claim. Palla requests that this Court render judgment awarding Palla those breach of contract damages from Bio-One, Arapoglu, and Transtrade jointly and severally. We affirm the trial court's judgment.

## Background

The lawsuit underlying this appeal arose from the alleged breach of, and tortious interference with, a Commission Agreement (Agreement) entered into between Palla and Bio-One. Bio-One is a producer of an organic fertilizer replacement. According to Palla's live pleading, Palla began marketing Bio-One's product in August 2003. In December 2005, Palla and Bio-One entered into the Agreement, which memorialized their prior understanding concerning Palla's compensation for locating purchasers and distributors of the Bio-One product. The Agreement provides a commission to Palla for Bio-One sales generated directly or indirectly by Palla, Palla's clients, or any companies associated with Palla in Turkey, Bulgaria, or any other territories approved by BioOne, including Europe and the United States. Palla helped develop a relationship between Bio-One and Transtrade, through Transtrade's employee, Arapoglu, and "established a joint effort to leverage" Arapoglu's contacts in Turkey and Bulgaria with contacts maintained by Palla in Romania, Europe, and throughout the Middle East. In exchange for Palla's efforts to develop a relationship between Bio-One and Transtrade, Bio-One and Palla agreed Palla would receive a "commission for all sales made by Bio-One in Turkey and/or Bulgaria, which sales were to, through, or with the assistance of Transtrade, all of which would be under the terms of the Agreement." In July 2007, Arapoglu severed ties with Palla. In 2009, Palla discovered the severance of ties was "done in an effort to cut Palla out of the Transtrade and Bio-One payment structure," and "Arapoglu, on behalf of Transtrade, actively interfered with Bio-One's obligations to pay Palla his due and owing commissions." Bio-One made sales of its product "to, through, or with the assistance of Transtrade beginning in January 2007," but no commission payments were made to Palla despite the Agreement providing for such commissions.

In his live pleading, Palla sought to recover a commission on all sales of Bio-One's product "sold directly to or through Transtrade, or sales by Bio-One to any customer in Turkey and/or Bulgaria as the direct result of efforts by Transtrade." Palla also sought an accounting of all sales by Bio-One to any persons or entity "in Turkey and Bulgaria, or any other territory granted consent for sales by BioOne [sic], including the United States, Romania and other European countries, on or after December 20, 2005, so that Palla can calculate the proper amount of commissions that are due and owing under the terms of the Agreement."

The case was tried before a jury. In response to question 1 of the jury charge, the jury found Bio-One failed to comply with the Agreement. In response to question 2 of the charge, the jury found the amount of money that would fairly and reasonably compensate Palla for his damages that resulted from Bio-One's failure to comply with the Agreement is $278,718.28. In response to question 3 of the charge, the jury found Transtrade and Arapoglu intentionally interfered with the Agreement.[1] In response to question 4 of the charge, the jury found the amount of money that would fairly and reasonably compensate Palla for his damages proximately caused by Transtrade and Arapoglu's interference with the Agreement is $100,000.00.

Bio-One filed a motion for the trial court to disregard the jury's answer to question 4 of the charge and for entry of judgment. In his motion to disregard, Palla argued the damages found on his tortious interference with contract claim were improper because the damages should have put him in the same economic position he would have been in had the contract been performed. Accordingly, Palla argued the jury's finding of damages for tortious interference

---

[1] The jury was instructed that the elements of intentional interference with an existing contract are (1) a contract subject to interference; (2) an act of interference that was willful and intentional; (3) the act being the proximate cause of the Plaintiff's damage, and (4) actual damage or loss.

with contract should have been in the same amount as the jury's finding of damages for his breach of contract claim.

The trial court denied Palla's motion to disregard the jury's answer to question 4 of the charge, and the trial court signed a judgment in favor of Palla against Bio-One, Arapoglu, and Transtrade, jointly and severally, in the amount of $100,000.00 and against Bio-One in the amount of $178,718.28.  Palla filed this appeal, attacking the trial court's judgment.

**Damages**

In his first issue, Palla asserts the trial court erred by failing to apply the proper measure of damages for a tortious interference with contract claim.  Palla contends the trial court incorrectly denied his motion to disregard the jury's finding of damages for Arapoglu's and Transtrade's tortious interference in response to question 4 of the jury charge.  In his second issue, Palla asserts the final judgment should be reversed and a judgment rendered awarding Palla the amount of breach of contract damages found by the jury in response to question 2 of the charge from Bio-One, Arapoglu, and Transtrade jointly and severally.  Appellees argue that jury charge questions 2 and 4 are not in conflict, but instead have been harmonized by the jury because in response to question 2 of the charge, the jury found the damages proximately caused by Bio-One's failure to comply with the Agreement, and in response to question 4 of the charge, the jury found the damages proximately caused by Arapoglu and Transtrade's tortious interference with the Agreement.

*Standard of Review*

"A trial court should disregard a jury finding if the jury question to which the finding responds is legally defective; the answer to a legally defective question is immaterial to the judgment."  *Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 394 (Tex. App.—Houston [1st Dist. 2013, pet. denied) (en banc).  "Similarly, a trial court should disregard a jury finding if

–4–

the evidence is legally insufficient to support it, or if a directed verdict would have been proper because a legal principle precludes recovery." *Id.*; *see also* TEX. R. CIV. P. 301.

Whether a jury finding is supported by the evidence is resolved under the same standard of review applied to challenges to the legal sufficiency of the evidence. *McAlpin v. Sanchez*, 858 S.W.2d 501, 508 (Tex. App.—Corpus Christi 1993, writ denied). Accordingly, we consider only evidence and inferences supporting the finding and disregard all contrary evidence and inferences. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Cantu v. Butron*, 921 S.W.2d 344, 348 (Tex. App.—Corpus Christi 1996, writ denied). In so doing, we must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

*Analysis*

Palla contends he is entitled to recover from Bio-One, Arapoglu, and Transtrade, jointly and severally, $278,718.28 in breach of contract damages found by the jury. Palla asserts the trial court erred in failing to sign a judgment imposing joint and several liability of appellees for the breach of contract damages because in a case such as this involving tortious interference with contract, the party aggrieved by the tortious interference is entitled, as a matter of law, to recover benefit of the bargain damages, the same measure of damages applied by the jury to Palla's breach of contract claim.

"The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract interfered with, to put the plaintiff in the same economic position he would have been in had the contract interfered with been actually performed." *Am. Nat'l. Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990); *see also Sandare Chem. Co. v. WAKO Int'l, Inc.*, 820 S.W.2d 21, 24 (Tex. App.—Fort Worth 1991, no pet.) ("[T]he general rule [is] that the measure of damages for

–5–

tortious interference with contract is the same as for breach of contract, attempting to put the plaintiff in the same economic position he would have been in had the contract not been breached.") (citing *Armendariz v. Mora*, 553 S.W.2d 400, 406 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.)); *Maxvill-Glasco Drilling Co., Inc. v. Royal Oil & Gas Corp.*, 800 S.W.2d 384, 386 (Tex. App.—Corpus Christi 1990, writ denied) ("Generally, the basic measure of actual damages for tortious interference with a contract is the same as the measure of damages for the breach of the contract.") (citing *Am. Nat'l. Petroleum Co.*, 798 S.W.2d at 278).

The general rule, however, is not without exception. "Although breach of the interfered-with contract is probably the most common measure of damage, tortious interference does not limit the damage for the tort to that alone." *Fridl v. Cook*, 908 S.W.2d 507, 513 (Tex. App.—El Paso 1995, writ dismissed w.o.j.). "Damages for tortious interference with contract are necessarily limited to damages proximately caused by the act of interference and do not extend to any other breach of the contract that the contracting party happened to commit." *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 401 (5th Cir. 2013) (applying Texas law) (amounts for breach of contract and tortious interference were the same because defendant admitted the only contractual breach at issue was caused by the interference).

A "plaintiff must adduce substantial, competent evidence of a character that can permit reasonable men and women to determine that damage was caused by the breach [of contract] or [tortious] interference, and to assess with reasonable certainty the amount of damage and degree of causation of the damage by the breach [of contract] or [tortious] interference relative to other factors." *Univ. Computing Co. v. Mgmt. Sci. Am.*, 810 F.2d 1395, 1398 (5th Cir. 1987) (applying Texas law); *see also* RESTATEMENT (SECOND) OF TORTS §774A cmt. e (1979) ("The [party who tortiously interfered] and the contract breaker are both wrongdoers . . ., and each is liable for the entire loss that he has caused.").

A court may not strike down jury answers on the ground of conflict if there is any reasonable basis on which the answers may be reconciled. *Consol. Tex. Fin. v. Shearer*, 739 S.W.2d 477, 482 (Tex. App.—Fort Worth 1987, pet. ref'd) (divergent answers to jury questions concerning damages that, while potentially overlapping, are not identical, do not present a case of conflict requiring the court to strike them down). Here, the question is whether there is sufficient evidence that Arapoglu and Transtrade's interference with the Agreement was the proximate cause of the entire amount of damages the jury found for breach of the Agreement.[2] If the evidence on that question is insufficient, the jury's responses to questions 2 and 4 in the jury charge are not necessarily inconsistent; the jury could have determined that Arapoglu and Transtrade were responsible for some, but not all, of the damages resulting from Bio-One's breach of the Agreement. No record of the evidence admitted at trial was brought forward on appeal, and there is, therefore, no evidence that the tortious interference found by the jury was the proximate cause of the entire amount of breach of contract damages. *See id*. ("The record does not reveal whether [the party claiming tortious interference] depends upon breach of the . . . contract to establish damages under his tortious interference claim.").[3]

An appellant bears the burden to bring forward a record that enables the appellate court to determine whether appellant's complaints constitute reversible error. *See Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (per curiam); *Christiansen v. Prezelski*,

---

[2] Palla's proposed jury charge did not request an instruction that the measure of damages for breach of contract and tortious interference was the same. Palla did not request a jury question as to whether Arapoglu and Transtrade's tortious interference proximately caused the breach of contract. In fact, jury questions 1 and 2, regarding Bio-One's breach of contract and Palla's damages resulting from Bio-One's failure to comply with the Agreement, and jury questions 3 and 4, regarding Arapoglu and Transtrade's tortious interference with the Agreement and the damages proximately caused by the tortious interference, were questions specifically requested by Palla in his proposed jury charge. A party cannot ask something of the trial court and then complain that the court erred by granting his request. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 861 (Tex. 2005) (citing *Ne. Tex. Motor Lines v. Hodges*, 138 Tex. 280, 158 S.W.2d 487, 488 (1942)). Even if we assume, without deciding, that the charge was erroneous, the doctrine of invited error provides that a party may not complain of an error which the party invited. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009); *Tittizer*, 171 S.W.3d at 862.

[3] The reporter's record consists of a seventeen-page record of the hearing of Palla's Motion for Findings of Attorney's Fees and Motion to Disregard Jury Finding Number 4 and Entry of Judgment. While the record on appeal contains a discussion between the trial judge and the attorneys for the parties regarding evidence from which the jury could make a damage finding of $100,000.00 for tortious interference, there is no record of the evidence admitted at trial regarding damages.

–7–

782 S.W.2d 842, 843 (Tex. 1990) (stating that burden is on appellant to present sufficient record to show error requiring reversal); *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 582 (Tex. App.—Houston [1st. Dist.] 2007, no pet.) (it is appellant's burden to bring forward a sufficient record to show the error committed by the trial court). Issues depending on the state of the evidence cannot be reviewed without a complete record, including the reporter's record. *See Favaloro v. Comm'n for Lawyer Discipline*, 994 S.W.2d 815, 820 (Tex. App.—Dallas 1999, pet. stricken). At oral submission of the appeal, Palla's counsel stated the reporter's record of trial was not requested, because it is Palla's position he is entitled to prevail on appeal as a matter of law. "[W]hen a record is incomplete (and the rules on partial records do not apply—which they do not), we must presume that the missing portion of the record supports the factual determinations made by the fact-finder." *In re Estate of Arrendell*, 213 S.W.3d 496, 503 (Tex. App.—Texarkana 2006, no pet.) (citing *Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex. 2002)).[4]

Total damages for Bio-One's failure to pay Palla commissions due under the Agreement would not necessarily have been the same amount Bio-One should have paid Palla had Arapoglu and Transtrade not interfered with the relationship between Bio-One and Palla. Indeed, Palla's live pleading sought an accounting:

> of all sales by Bio-One to any person or entity in the territory of Turkey and Bulgaria, or any other territory granted consent for sales by Bio-One, including the United States, Romania and other European countries, on or after December 20, 2005, so that Palla can calculate the proper amount of commissions that are due and owing under the terms of the Agreement.

The record on appeal contains no evidence concerning the location of product sales allegedly justifying Palla's unpaid commissions, and whether those product sales arose from the relationship between Bio-One and Transtrade or otherwise. Accordingly, we have no basis in the

---

[4] Where only a partial reporter's record has been designated, we must presume the partial record constitutes the entire record for purposes of reviewing the stated issues. TEX. R. APP. P. 34.6(c)(4). "This presumption applies even if the statement [of the points or issues to be presented on appeal] includes a point or issue complaining of the legal or factual sufficiency of the evidence to support a specific factual finding identified in that point or issue." *Id.*

record for concluding the entire amount of the breach of contract damages in this case related to Bio-One product sales arising from the relationship between Bio-One and Transtrade.

The jury apparently found $278,718.28 to be the proper amount of damages resulting from Bio-One's breach of the Agreement, and the jury apparently found $100,000.00 be the proper amount of damages resulting from Arapoglu and Transtrade's tortious interference with the relationship between Palla and Bio-One. The jury's findings indicate it determined the damages related to the breach of contract claim and the damages related to the tortious interference with contract claim were coextensive only with respect to the lost benefits of the Agreement which were a consequence of the tortious interference. Thus, the damages related to tortious interference could, and apparently did, differ from the total damages for Bio-One's breach of the Agreement, and the variance between the damages found for breach of the Agreement and for tortious interference with contract reflects the jury's judgment that Arapoglu and Transtrade were not responsible for all of the damages caused Palla by Bio-One's breach of the Agreement. *See Am. Nat'l. Petroleum Co.*, 798 S.W.2d at 278; *Homoki*, 717 F.3d at 401. On this record, question 4 of the jury charge inquiring about the amount of money necessary to compensate Palla for tortious interference with contract was not immaterial to this dispute. Accordingly, we cannot conclude the trial court erred by denying Palla's motion to disregard the jury's response to question 4 of the jury charge. We resolve Palla's first issue against him.

Having concluded there was no error in the trial court's denial of Palla's motion to disregard the jury's response to question 4 of the charge, we conclude the trial court did not err by entering its judgment that Bio-One, Arapoglu, and Transtrade are jointly and severally liable for damages in the amount of $100,000, rather than jointly and severally liable for damages in the amount of $278,718.28. Accordingly, we resolve Palla's second issue against him.

**Conclusion**

–9–

Having resolved Palla's first and second issues against him, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

121657F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARK PALLA, Appellant

No. 05-12-01657-CV     V.

BIO-ONE, INC., AYDEMIR ARAPOGLU,
AND TRANSTRADE, LLC, Appellees

On Appeal from the 14th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. 10-02222-A.
Opinion delivered by Justice Fillmore,
Justices Moseley and FitzGerald
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Bio-One, Inc., Aydemir Arapoglu, and Transtrade, LLC recover their costs of this appeal from appellant MARK PALLA.

Judgment entered this 24th day of February, 2014.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE