**Affirmed and Opinion Filed December 1, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01419-CV

## IN THE INTEREST OF: K.R.C. AND L.R.C.

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No.429-51917-2010**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Bridges

Austin Croom appeals the trial court's final divorce decree awarding Casey Croom $397,000 and permanently enjoining the parties from having their daughters, K.R.C. and L.R.C., in the presence of Christina Hopper or Hopper's two sons. In two issues, Austin argues the trial court abused its discretion by ordering an equalization payment in the form of a money judgment for $397,000 because there was no evidence to support reconstituting the estate based on fraud on the community and by entering a permanent injunction that was not in the best interest of K.R.C. and L.R.C.. We affirm the trial court's judgment.

Austin and Casey were married in 1999. Together, they owned ninety-eight percent of Aecium, a medical billing services limited partnership. The remaining two percent of Aecium was owned by ACM Management, which was owned one hundred percent by Austin and Casey. Hopper, an Aecium employee, worked with accounts payable, accounts receivable, payroll, human resources support, and software implementation. In late 2007 or early 2008, Austin and

Hopper began a sexual relationship. Austin increased Hopper's pay from $50,600 in 2008, to $91,136 in 2009, to $97,575 in 2010, and to $92,400 in 2011.

In April 2010, Austin and Casey separated, and Casey filed for divorce. The divorce petition asserted Casey should be awarded a disproportionate share of the community estate because of Austin's fault in the breakup of the marriage and Austin's fraud on the community and wasting of community assets. Since October 1, 2009, a standing order had been in place in Collin County ordering the parties in a divorce case to refrain from, among other things, incurring any indebtedness other than legal expense in connection with the divorce, unless specifically authorized by the standing order. Nevertheless, in September 2011, Austin co-signed a contract with Hopper for the remodeling of her home, and the contract exposed Austin to liability for "just over $13,000." Hopper paid the contract using money from her mother, her own cash, and a $3000 loan from Aecium.

The matter proceeded to a trial before the court in January 2012. Bryan Rice, a business appraiser, testified he performed a valuation of Aecium and determined its fair market value was $302,000 as of March 31, 2012. Rice testified he made a capital valuation adjustment for salaries and wages and adjusted Hopper's salary to the United States Board of Labor and Statistics 75th percentile for bookkeeping, accounting, auditing, and clerks. Not including the year 2012, Price determined Hopper had been overcompensated by approximately $150,000.

Stephen Fuqua, a certified public accountant, testified he analyzed Rice's valuation. Fuqua testified he agreed with Rice's "adjustment with regard to excessive salaries being paid" to Hopper. Fuqua testified he agreed Hopper was overpaid "about $150,000" or approximately $50,000 per year in 2009, 2010, and 2011. Fuqua testified he understood Hopper was still employed in 2012, but Rice's valuation did not include 2012. Denise Kauf, a certified valuation

analyst who worked with Fuqua, testified she adopted Fuqua's report as her analysis of Rice's valuation of Aecium.

Casey testified Austin's adultery precipitated their divorce. Casey asked the trial court to affirmatively find that Austin had wasted community assets and reconstitute the community estate as it related to overpayments to Hopper, money spent on repairs to Hopper's home, and money spent to repair Austin's jet ski. Casey also asked the trial court to enter orders enjoining Hopper's two teenage sons from being in the presence of K.R.C. and L.R.C.

Hopper testified she was not aware "the parties had an agreement that the children were not to be around any person with whom a parent was in an intimate or dating relationship." Hopper testified she was also not aware of "such an injunction entered by the Court on January 4th, 2012." Hopper testified Austin's children had been in her presence twice and "possibly" in the presence of Hopper's two sons.

Before closing arguments, with counsel for both Casey and Austin present, the trial court made the following statement:

> All right. I will note for the record that both counsel met with me and then Dr. Grace Graham and -- what is her name, Taylor -- Jennifer Taylor. Both who are counselors for [K.R.C. and L.R.C.]. We all met in chambers this morning for at least half an hour or more to discuss concerns that I had regarding the girls, so I don't believe we are going to have -- I don't need any testimony about that this morning. Have you had a chance to talk to your clients? Now that it's been about two hours, have you had a chance to talk to your clients about what happened in chambers?

Counsel for Austin replied, "Yes, we have." The trial court then held an off-the-record discussion. Back on the record, the trial court asked the parties to proceed with closing arguments. At the conclusion of trial, the trial court took the matter under advisement.

In March 2013, the trial court issued a "Judge's Memorandum" granting divorce on the grounds of adultery. The trial court found Austin was "at fault in [the] breakup of the marriage and guilty of adultery," Austin had wasted community assets and engaged in fraud on the

–3–

community estate, and the community estate should be reconstituted. The memorandum enjoined, among other things, "the children being in the presence of or having contact with Christy Hopper or her children." The memorandum divided the assets according to a spreadsheet reflecting three amounts of "Reconstitution of Community": $195,000, $3500, and $1500. In total, the memorandum ordered a $347,000 equalization payment to Casey.

In May 2013, Casey filed her second motion to enter final decree of divorce with a proposed decree awarding her the $347,000 equalization payment plus $50,000 from an Aecium 401k. Both Casey's proposed decree and a proposed decree submitted by Austin indicated Austin paid the $50,000 to a law firm, and the $50,000 would have to be disgorged in order to pay it to Casey. The trial court did not sign either proposed decree. In August 2013, the trial court entered a final decree of divorce awarding Casey a $397,000 judgment to equalize the property division. The final decree also enjoined Casey and Austin from having K.R.C. and L.R.C. in the presence of or having any contact with Hopper or her children. This appeal followed.

In his first issue, Austin argues the trial court abused its discretion in ordering an equalization payment in the form of a money judgment for $397,000 in favor of Casey because there was no evidence to support reconstituting the estate based on waste or fraud on the community. Specifically, Austin argues there is no evidence to show Hopper was overpaid; partnership funds are not community property, and any reconstitution that included $195,000 for compensation paid by Aecium to Hopper was error because the funds used were not community property; the expert testimony that Hopper was overpaid was "purely conclusory" and therefore no evidence; and the trial court erred to the extent it reconstituted the estate with $3500 because there was no evidence Casey was deprived of $3500 – instead, the evidence showed Austin co-signed Hopper's contract for $13,500 to remodel her home and Aecium loaned Hopper $3000,

which Hopper repaid. For all these reasons, Austin argues, there was no evidence to support the $397,000 money judgment against Austin.

In response, Casey argues Austin's adultery is incontrovertible and a separate basis for a disproportionate division of property. Casey argues the "calculation of the excessive compensation paid to [Hopper] was uncontradicted and supported by the entirety of the evidence." The opinions of the valuation experts were in agreement and not conclusory. Therefore, Casey argues, the "calculation of the resulting reconstitution is supported by the evidence."

An appellate court reviews a trial court's division of property under an abuse of discretion standard. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). The trial court is afforded broad discretion in dividing the community estate and an appellate court must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Schleuter v. Schleuter*, 975 S.W.2d 584, 589 (Tex. 1998); *In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *In re Marriage of C.A.S.*, 405 S.W.3d at 383; *Moroch*, 174 S.W.3d at 857. To determine whether the trial court abused its discretion, an appellate court considers whether the trial court: (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *In re Marriage of C.A.S.*, 405 S.W.3d at 383. The applicable sufficiency review comes into play with regard to the first question. *In re Marriage of C.A.S.*, 405 S.W.3d at 383; *Moroch*, 174 S.W.3d at 857. An appellate court then proceeds to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *In re Marriage of C.A.S.*, 405 S.W.3d at 383; *Moroch*, 174 S.W.3d at 857.

In family law cases, the abuse of discretion standard overlaps with the traditional sufficiency standards of review. *Moroch*, 174 S.W.3d at 857. When deciding if the trial court abused its discretion, the legal and factual sufficiency of the evidence are not independent grounds of reversible error, but instead constitute factors relevant to an appellate court's assessment of whether the trial court abused its discretion. *In re Marriage of C.A.S.*, 405 S.W.3d at 383; *Moroch*, 174 S.W.3d at 857.

In an appeal from a bench trial, an appellate court reviews a trial court's conclusions of law de novo and will uphold them on appeal if the judgment of divorce can be sustained on any legal theory supported by the evidence. *Reisler v. Reisler*, 439 S.W.3d 615, 619 (Tex. App.—Dallas 2014, no pet.). An appellate court may not challenge a trial court's conclusions of law for factual sufficiency, but it may review the legal conclusions drawn from the facts to determine their correctness. *Id.* If an appellate court determines that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.*

When the appellate record contains a complete reporter's record, an appellate court reviews the trial court's findings of fact under the same standards for legal and factual sufficiency that govern the review of jury findings. *In re Marriage of C.A.S.*, 405 S.W.3d at 382; *Moroch*, 174 S.W.3d at 857. A legal sufficiency challenge to the findings of fact fails if there is more than a scintilla of evidence to support the findings. *Reisler*, 439 S.W.3d at 620. In conducting a factual sufficiency review, appellate courts may set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Id.* In evaluating the trial court's findings of fact, an appellate court must give substantial deference to the trial court's determination of the weight and credibility of the evidence. *Id.* In a bench trial, the trial court acts as the factfinder and is the sole judge of the credibility of the witnesses. *Id.*

In a divorce decree, the trial court shall order a division of the parties' estate in a manner that the trial court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. §7.001 (West 2006); *In re Marriage of C.A.S.*, 405 S.W.3d at 384. The property division need not be equal, and the trial court may consider many factors when exercising its broad discretion to divide the marital property. *In re Marriage of C.A.S.*, 405 S.W.3d at 384. Mathematical precision in dividing property in a divorce is usually not possible. *Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981). Generally, in a fault-based divorce, the trial court may consider the conduct of the errant spouse in making a disproportionate distribution of the marital estate. *In re Marriage of C.A.S.*, 405 S.W.3d at 392; *see Young v. Young*, 609 S.W.2d 758, 761-62 (Tex. 1980). Accordingly, the trial court's finding of adultery can support the disproportionate division of the community property. *In re Marriage of C.A.S.*, 405 S.W.3d at 392. The party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *Id.* at 384.

Here, the fact of Austin's adultery and its role in the dissolution of his marriage to Casey was not in dispute, and the trial court specifically found Austin was "at fault in [the] breakup of the marriage and guilty of adultery," Austin had wasted community assets and engaged in fraud on the community estate, and the community estate should be reconstituted. The finding of adultery alone could support a disproportionate distribution of community property. *Id.*

Further, attached to the March 2013 memorandum was a community property worksheet showing that, before the equalization payment, Casey had a net worth of $65,916.98 and Austin's net worth was $631,573.31. In other words, Casey had 9.45 percent of the community estate and Austin had 90.55 percent. After the equalization payment to Casey, she received $347,000 of the community estate and Austin received $385,000. The worksheet listed $50,000

of the Aecium 401k among Casey's assets. Thus, after Austin liquidated $50,000 of the Aecium 401k to pay his attorney's fees, Casey retained, before equalization, $15,916.98 of the community estate while Austin retained $631,573.31. The trial court could have made the equalization payment of $347,000 solely in an effort to equalize the community estate. Further, the trial court did not abuse its discretion in adding $50,000 to the equalization payment, bringing the total equalization payment $397,000 in the final decree.

As to the $195,000 reconstitution, three experts testified Hopper was overpaid approximately $50,000 per year over three years, but this did not include overpayments in 2012. There was no evidence to contradict the experts' calculations and testimony. As to the $3500 and $1500 amounts the trial court characterized as reconstitution of the community, although Casey concedes these amounts were awarded on an "unknown basis," these amounts are supported by the evidence. As the trier of fact, the trial judge could disbelieve that Hopper paid back the $3000 she borrowed from Aecium. In fact, the evidence showed Austin co-signed a home remodeling contract for $13,500 and made a direct payment of $3000. It was within the trial court's discretion to determine the lesser amounts of $3500 and $1500 were amounts Austin obtained by fraud in connection with the remodeling contract.

Finally, Austin argues partnership funds are not community property, relying on *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 518 (Tex. App.—San Antonio 2001, pet. denied). Therefore, Austin argues, any reconstitution that included $195,000 for compensation paid by Aecium was error because the funds used were not community property. Austin argues in his brief that "Austin did not deprive Casey of any interest in Aecium. Aecium made payments to its employees in the course of doing business." Despite Austin's characterization of partnership funds as partnership property, Casey argues Austin does not have "the unfettered right to deplete an undisputed community asset."

We conclude *Lifshutz* is distinguishable. In *Lifshutz*, Husband and Wife brought "substantial separate property" into the marriage. *Id.* at 514. The trial court found all of Husband's interests in certain companies were his separate property because Husband either acquired those interests before marriage or by gift during marriage. *Id.* During the divorce, Wife attempted to pierce the corporate veil of Husband's companies and reach company assets for distribution as part of the community estate. *Id.* The court of appeals cited the Texas Revised Uniform Partnership Act for the proposition that "a partner's spouse has no community property right in partnership property." *Id.* at 518 (citing TEX. REV. CIV. STAT. ANN. art. 6132b-5.01 cmt.) The court stated a trial court may not award specific partnership assets to a non-partner spouse in the event of a divorce. *Id.* The trial court may only award the spouse an interest in the partnership. *Id.* Thus, where Husband's interest in a partnership was separate property, Wife could not pierce the partnership and acquire partnership assets for distribution.

In contrast, the record here shows Aecium was owned one hundred percent by Casey and Austin, unlike the separate-property companies in *Lifshutz*. *See id.* at 514. Casey did not seek to pierce the partnership and acquire partnership assets. She sought reconstitution of amounts fraudulently paid by the partnership in which she held a fifty percent interest. In effect, Austin used Aecium to deprive Casey of her interest in Aecium: the approximately $195,000 fraudulently paid to Hopper. We conclude the evidence supported the $397,000 money judgment against Austin, and the trial court did not abuse its discretion in entering its judgment. *See In re Marriage of C.A.S.*, 405 S.W.3d at 384. We overrule Austin's first issue.

In his second issue, Austin argues the trial court abused its discretion in entering a permanent injunction prohibiting the parties from having their daughters, K.R.C. and L.R.C., in the presence of Hopper or her children. Specifically, Austin argues there was no evidence the injunction was in the best interests of the children, and the injunction was overly broad. Casey

responds that no record was made of the hearing at which K.R.C. and L.R.C.'s counselors testified and the trial court considered the issue of injunctive relief. In the absence of a record, Casey argues, Austin has failed to preserve his challenge to the sufficiency of the evidence. Austin, in a reply brief, responds that section 105.003 of the family code requires a record to be made in every suit affecting the parent-child relationship, and the failure to make a record requires reversal.

Here, the record shows the trial court conducted a hearing on this issue at which counsel and the two counselors[1] for K.R.C. and L.R.C. were present. The record indicates the hearing lasted approximately half an hour and resulted in the trial court stating no testimony was needed on the record. There is no record of this hearing.

Although a record is required to be made in all suits involving the parent-child relationship unless waived by the parties with the consent of the court, TEX. FAM. CODE ANN. § 105.003(c) (West 2014), a party may waive the making of a record by express written agreement or by failing to object to the lack of a record during the hearing. *In re D.J.M.*, 114 S.W.3d 637, 639 (Tex. App.—Fort Worth 2003, pet. denied). Here, counsel for both Casey and Austin were present at the in-camera hearing the trial court conducted on the concerns the trial court had "regarding the girls." The trial court described the in-camera hearing on the record, although no reporter's record was made of the hearing. Neither party objected to the absence of a record and, in fact, the trial court intentionally went off the record a second time to discuss the in-camera hearing. Thus, it appears the parties wanted there to be no record of the matters discussed in camera, and the trial court purposefully conducted the hearings without making a record. The parties do not argue they were unaware of what happened during the in-camera hearing or that they were prevented from participating in the hearing. Under these circumstances, we conclude

---

[1] The counselors were school counselor Jennifer Taylor, L.P.C. and Dr. Grace Graham, their counselor.

the making of a record was waived by the parties with the consent of the court.  *See* TEX. FAM. CODE ANN. § 105.003(c) (West 2014); *In re D.J.M.*, 114 S.W.3d at 639; *cf Ramirez v. Sanchez*, 871 S.W.2d 534, 535–36 (Tex. App.—San Antonio 1994, no writ) (reversing trial court judgment where no record was made, order stated that parties waived record with court's consent, but appellant was not present at any proceeding where he could have waived making of record); *Hunter v. Hunter*, 666 S.W.2d 335, 335–36 (Tex. App.—Houston [14th Dist.] 1984, no writ) (reversing default judgment when no record of proceedings was made, appellant was not present at proceedings, and no evidence of waiver existed in record).

As to Austin's challenge to the sufficiency of the evidence, when a record is incomplete, we must presume that the missing portion of the record supports the factual determinations made by the fact-finder.  *See Palla v. Bio-One, Inc.*, 424 S.W.3d 722, 727 (Tex. App.—Dallas 2014, no pet.).  We overrule Austin's second issue.

We affirm the trial court's judgment.


131419F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF THE MARRIAGE OF: CASEY LEE CROOM AND AUSTIN GREGORY CROOM AND IN THE INTEREST OF: K.R.C. AND L.R.C., CHILDREN

No. 05-13-01419-CV

On Appeal from the 429th Judicial District Court, Collin County, Texas
Trial Court Cause No. 429-51917-2010.
Opinion delivered by Justice Bridges.
Justices Lang-Miers and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Casey Croom recover her costs of this appeal from appellant Austin Croom.

Judgment entered December 1, 2015.