**AFFIRM; Opinion Filed December 10, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-24-00041-CV**
_____

**CHARLOTTE CARROLL, Appellant**
**V.**
**I.Q. DATA INTERNATIONAL, INC., Appellee**

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-23-06070-B**

**MEMORANDUM OPINION**

Before Justices Molberg, Breedlove, and Kennedy
Opinion by Justice Kennedy

Charlotte Carroll appeals the trial court's order granting appellee I.Q. Data International, Inc. ("I.Q. Data")'s motion to declare Carroll a vexatious litigant pursuant to Chapter 11 of the Texas Civil Practice and Remedies Code. In her first issue, Carroll argues the trial court violated her state constitutional and statutory rights by failing to conduct a hearing at which Carroll was present. In her second issue, Carroll argues the trial court abused its discretion by determining her to be a vexatious litigant. We affirm. Because all dispositive issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2(a), 47.4.

BACKGROUND

On March 17, 2022, Carroll signed a twelve-month lease agreement with Property Reserve Inc. d/b/a Fountain Pointe Las Colinas ("Fountain"). Near the end of her lease term, Carroll vacated the property without paying rent for the month or additional fees for utilities and cleaning. Fountain assigned Carroll's account to I.Q. Data for collection. When I.Q. Data's representative contacted Carroll regarding the subject debt, Carroll stated she did not owe the subject debt because she had filed suit against Fountain and further requested that I.Q. Data not contact her anymore. I.Q. Data verified the subject debt with Fountain and advised Carroll that it had done so.

On September 13, 2023, Carroll filed a petition for suit against I.Q. Data, alleging violations of the Texas Debt Collections Practices Act (DCPA) and the Texas Deceptive Trade Practices Act (DTPA), fraudulent misrepresentation, fraud, and intentional infliction of emotional distress. I.Q. Data filed an answer in which it generally denied Carroll's allegations and asserted numerous defenses, as well as counterclaims for bad faith and groundless claims under Section 17.50 of the Texas Business Code and asserted that Carroll's suit was brought in bad faith or for the purpose of harassment under Section 392.403 of the Texas Finance Code.

On the same day it filed its answer and counterclaims, I.Q. Data filed a motion to declare Carroll a vexatious litigant pursuant to Chapter 11 of the Texas Civil Practice and Remedies Code. In that motion, I.Q. Data asserted that "Carroll has

filed over 30 lawsuits in Dallas and Tarrant counties as a pro se litigant in recent years and she unsuccessfully appeals nearly every judgment or order that is entered against her." I.Q. sought a declaration that Carroll is a vexatious litigant to prevent her from filing any new suit in Texas as a pro se litigant without first obtaining permission from a local administrative judge, a requirement that Carroll pay a $20,000 bond to provide security for I.Q. Data's anticipated legal fees and expenses, and an order staying further proceedings until such payment is made. I.Q. Data urged it could show that there was not a reasonable probability Carroll would prevail against it and that Carroll, in the seven-year period immediately preceding the date of the motion, had commenced, prosecuted, or maintained at least five state or federal civil actions as a pro se litigant that were: (a) finally determined adversely to Carroll; (b) remained pending at least two years without having been brought to trial or hearing; or (c) determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure. *See* TEX. CIV. PRAC. & REM. CODE § 11.054(1). In describing the background for its motion, I.Q. Data stated that on June 28, 2023, Carroll filed suit against I.Q. Data in a justice court in Dallas County, alleging violations of the DCPA and the DTPA, fraudulent misrepresentation, fraud, and intentional infliction of emotional distress. In that case, I.Q. Data moved for summary judgment, but Carroll nonsuited her claims against I.Q. Data before later filing the petition in the instant case.

On November 13, 2023, the trial court conducted a hearing via a videoconference on I.Q. Data's motion to declare Carroll a vexatious litigant. At the beginning of the hearing, the trial court judge indicated Carroll had not appeared in person at the courthouse and that the judge's staff had communicated with Carroll on how to access the videoconference, but that the judge could not tell from the videoconference program that Carroll had logged into same. Near the expiration of time for the scheduled hearing, the judge could see that Carroll had attempted to log in. The judge brought Carroll into the hearing. Carroll indicated she had logged into the program forty minutes earlier but that she believed she had been sent to an incorrect virtual room to wait for the hearing. The trial judge denied that she could have been logged in and sent to a "wrong room," stating, "You either go to the [virtual] waiting room and we can see you're logged in, or you're not logged in." The trial judge stated she could see that Carroll had filed some exhibits but noted her response with exhibits was not accepted into the court's filing system. She indicated she would excuse the litigants to review the filings, including Carroll's response to I.Q. Data's motion once it was accepted into the court's filing system, and then she would reach a ruling. Carroll objected that she did not get to speak on her own behalf and requested the hearing be reset. The trial judge denied any statutory requirement to have an oral hearing at all. Carroll again objected that she did not get a chance to speak on her own behalf and renewed her request to continue

–4–

or reset the hearing. When the trial judge and Carroll began speaking over each other, the trial judge muted Carroll, noting:

> Ms. Carroll, I've had to mute your line because you will not stop speaking over me. Only one of us can talk one at a time, because the Court is having to make a record. As you know, somebody has to type down everything we say. So we can only talk one at a time.

Shortly thereafter, the trial court ended the hearing.

On December 29, 2023, the trial court judge signed an amended order granting I.Q. Data's motion to declare Carroll a vexatious litigant.[1] This appeal followed.

## DISCUSSION

We construe Carroll's issues as follows:

1. Whether the trial court violated Carroll's state constitutional and statutory rights by failing to conduct a hearing at which Carroll was present.[2]

2. Whether the trial court abused its discretion by determining Carroll to be a vexatious litigant.

## I. Trial Court Did Not Commit Reversible Error in Conducting the Hearing

On receipt of a motion under Section 11.051 of the Texas Civil Practice and Remedies Code, the court shall, after notice to all parties, conduct a hearing to

---

[1] The record does not contain an original order, if any was signed. However, we do not conclude such order is necessary to resolve Carroll's issues or dispose of this appeal.

[2] Carroll also argues on appeal that the trial court judge violated the Texas Code of Judicial Conduct by making certain statements during the hearing on I.Q. Data's motion and by conducting the hearing with only I.Q. Data present. We reject Carroll's reliance on the code of judicial conduct. She cites no authority, and we have found none, to support the proposition that a violation of the code automatically amounts to reversible error. Indeed, there is authority to the contrary. *See Kemp v. State*, 846 S.W.2d 289, 305 (Tex. Crim. App.1992) ("[M]ere violations of the Code of Judicial Conduct, alone, do not constitute reversible error."). The code is designed to provide guidance to judges and "to provide a structure for regulating conduct through the State Commission on Judicial Conduct." *Merritt v. Davis*, 331 S.W.3d 857, 863 (Tex. App.—Dallas 2011, pet. denied) (quoting TEX. CODE JUD. CONDUCT, Canon 8(A), *reprinted in* TEX. GOV'T

determine whether to grant the motion. *See* TEX. CIV. PRAC. & REM. CODE § 11.053(a). Carroll does not argue that she did not receive notice or that no hearing was conducted. Instead, she urges that the trial court violated her state constitutional rights to due course[3] as well as her right to a hearing under Section 11.053 by conducting the hearing without Carroll, muting Carroll during the hearing, and thus failing to allow Carroll to be present during the hearing. *See* TEX. CONST. art. 1, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."); § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); CIV. PRAC. & REM. § 11.053(a).

To determine whether a governmental action violates the due course of law guarantee, we engage in a two-step inquiry. *Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 905 (Tex. 2021) (citing *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d

---

CODE, tit. 2, subtit. G, app. B). Moreover, these are the same arguments set forth in Carroll's motion to recuse, the order denying which we do not have jurisdiction to review. *See* TEX. R. CIV. P. 18a. ("An order denying a motion to recuse may be reviewed only for abuse of discretion on appeal from the final judgment.").

[3] Carroll refers to this right as her right to due process, which is guaranteed by the U.S. Constitution, but she cites the state constitution, which guarantees her right to due course of law. *Compare* U.S. CONST. amend. 14 *with* TEX. CONST. art. 1, § 19; *see Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 905 (Tex. 2021) (noting due process clause of Fourteenth Amendment uses similar language as due course of law guarantee). Because Carroll cites only the state constitution, we construe her argument to be that her state constitutional right to due course of law was violated by the trial court's conduct. *See Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) ("While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction.") (citing *Mellinger v. City of Houston*, 3 S.W. 249, 252–53 (Tex. 1887)).

926, 929 (Tex. 1995)). First, does the plaintiff have a liberty, property, or other enumerated interest that is entitled to protection? *Id.* (citing *Than*, 901 S.W.2d at 929). Second, if a protected interest is implicated, did the government defendant follow due course of law in depriving the plaintiff of that interest? *Id.* (citing *Than*, 901 S.W.2d at 929).

Even assuming, without deciding, Carroll has a property interest in continuing to litigate without first obtaining permission from a local administrative judge, we conclude she received procedural due course of law. *See Than*, 901 S.W.2d at 929 ("While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction." (citing *Mellinger v. City of Houston*, 3 S.W. 249, 252–53 (Tex. 1887)).

Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Roper v. Jolliffe*, 493 S.W.3d 624, 636 (Tex. App.—Dallas 2015, pet. denied) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Than*, 901 S.W.2d at 930). What process is due is measured by a flexible standard that includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail. *See id.* (citing *Than*, 901 S.W.2d at 930).

The record reflects Carroll received notice of the hearing on I.Q. Data's motion, and she does not challenge the sufficiency thereof. Indeed, Carroll attended the hearing, although several minutes after it began. It appears her complaint is not about the notice itself, but rather is about the adequacy of the opportunity she was given to be heard at that hearing.

While the Texas Supreme Court has not addressed the precise issue presented in this case, we note that federal courts have held that an oral or evidentiary hearing is not necessary to satisfy due process requirements in vexatious-litigant proceedings. *United States v. Fabricant*, No. CR 03-01257-RSWL-1, 2015 WL 12857301, at *2 (C.D. Cal. Nov. 18, 2015) (citing *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1058 (9th Cir. 2007) (per curiam); *see also Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (holding "opportunity to be heard" does not require oral or evidentiary hearing on issue of attorney subject to discipline and that instead "opportunity to brief the issue fully satisfies due process requirements"). It is apparent that an oral or evidentiary hearing is not always necessary to satisfy due process requirements. For example, this Court has held that where a trial court elects to take a summary judgment under submission without an oral hearing, an appellant's due process rights are satisfied as long as he received a reasonable opportunity to present his written response and

evidence. *See Whiteside v. Ford Motor Credit Co.*, 220 S.W.3d 191, 195 (Tex. App.—Dallas 2007, no pet.) (concluding appellant's due process rights not violated by trial court's decision to take summary judgment under submission without oral hearing where record showed appellant filed response to summary-judgment motion and did not describe what further response he would make or set forth any evidence he was precluded from presenting to trial court). We have also overruled due process complaints regarding a trial court's decision to consider a rule 91a motion to dismiss and plea to the jurisdiction by submission, noting neither Texas law nor the Fourteenth Amendment requires oral hearing to rule on either motion or on a motion to compel discovery. *See Gentry v. Smith*, No. 05-18-01181-CV, 2019 WL 4033947, at *2 (Tex. App.—Dallas Aug. 27, 2019, pet. denied) (citing TEX. R. CIV. P. 91a.6; *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015); *Cire v. Cummings*, 134 S.W.3d 835, 844 (Tex. 2004).

The record reflects that after I.Q. Data filed its motion and one week before the hearing, Carroll attempted to file a "Motion to Deny [I.Q. Data's] Second Motion to Declare Plaintiff a Vexatious Litigant" with corresponding exhibits.[4] Moreover, Carroll does not describe what further response she would have made or what

---

[4] The response and attached exhibits do not appear in the clerk's record. Carroll, as the appellant, has the burden to bring forward a record that enables this Court to determine whether her complaints constitute reversible error. *See Palla v. Bio-One, Inc.*, 424 S.W.3d 722, 727 (Tex. App.—Dallas 2014, no pet.); *see also* TEX. R. APP. P. 34.5 (only items listed in Rule 34.5(a) are included in appellate record absent request from one of parties).

–9–

evidence she was precluded from presenting to the trial court. We conclude the trial court did not violate Carroll's rights to due course of law.

As for her complaint regarding the hearing requirement of Section 11.053(a), we need not decide whether the trial court failed to conduct the statutory hearing. *See* CIV. PRAC. & REM. § 11.053(a). Even assuming, without deciding, the trial court's conduct amounted to an erroneous failure to conduct the required hearing, error requires reversal only if it probably caused the rendition of an improper judgment or probably prevented appellant from properly presenting his case to the court of appeals. TEX. R. APP. P. 44.1(a); *In re Douglas*, 333 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Carroll did not advise the trial court of any evidence she would have and was barred from presenting at the hearing and, as noted above, Carroll does not describe on appeal what further response she would have made or what evidence she was precluded from presenting to the trial court. Thus, we cannot say that any failure to hold a hearing caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a). Nor could any failure to hold a hearing prevent Carroll from presenting her case on appeal. *See id.* Accordingly, we conclude any failure to hold the required hearing was harmless under the circumstances of this case. *See In re Douglas*, 333 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see also Mullins v. Ortiz*, 440 S.W.3d 48, 51 (Tex. App.—Waco 2009, no pet.) (similarly applying harmless error review to failure to conduct hearing pursuant to section 11.053 and concluding harmless error

–10–

where non-movant filed lengthy response to motion and record did not indicate non-movant "had any live testimony or other evidence not available to the trial court from the written pleadings at the time of its ruling.").

We overrule Carroll's first issue.

## II.     *Trial Court Did Not Abuse Its Discretion by Determining Carroll to be a Vexatious Litigant*

Chapter 11 of the Texas Civil Practice and Remedies Code provides a mechanism to restrict vexatious litigation by pro se individuals who abuse the legal system by pursuing numerous frivolous lawsuits.  *See* CIV. PRAC. & REM. §§ 11.001–.104.  The statute seeks to curb vexatious litigation by requiring plaintiffs found by the court to be "vexatious" to post security for costs before proceeding to trial.  *See id.* §§ 11.051–.056.

Under Chapter 11, a defendant against whom a civil action is commenced, maintained, or pending may move the trial court for an order determining that the plaintiff is a vexatious litigant.  *See id.* § 11.051.  The court may find that a pro se plaintiff is a vexatious litigant if the defendant shows (1) in reasonable probability, the plaintiff will not prevail in the case against the defendant and (2) the plaintiff has a history of pro se litigation covered by the statute.  *See id.* § 11.054(1).[5]

---

[5] Although not asserted here, the statute also provides a court may find a plaintiff a vexatious litigant if the defendant shows that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that:

> (2) after a litigation has been finally determined against the plaintiff, the plaintiff repeatedly relitigates or attempts to relitigate, pro se, either:

The statute defines a history of vexatious litigation as including having commenced, prosecuted, or maintained at least five state or federal civil actions as a pro se litigant, other than in a small claims court, in the immediately preceding seven-year period that were:

(1) finally determined adversely to the plaintiff;

(2) permitted to remain pending at least two years without having been brought to trial or hearing; or

(3) determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure.

*Id.* If the trial court determines the plaintiff is a vexatious litigant, then it must order the plaintiff to furnish security. *See id.* § 11.055. If the plaintiff does not timely furnish the security, the trial court has no option but to dismiss the litigation as to the defendant who filed the motion. *See id.* § 11.056.

We review a trial court's order determining that a litigant is vexatious for an abuse of discretion. *See Amrhein v. Bollinger,* 593 S.W.3d 398, 404 (Tex. App.—Dallas 2019, no pet.) (citing *Harris v. Rose*, 204 S.W.3d 903, 905 (Tex. App.—Dallas 2006, no pet.)). Under this standard, we may not substitute our judgment for

---

(A) the validity of the determination against the same defendant as to whom the litigation was finally determined; or

(B) the cause of action, claim, controversy, or any of the issues of fact or law determined or concluded by the final determination against the same defendant as to whom the litigation was finally determined; or

(3) the plaintiff has previously been declared to be a vexatious litigant by a state or federal court in an action or proceeding based on the same or substantially similar facts, transition, or occurrence.

CIV. PRAC. & REM. § 11.054(2), (3).

the judgment of the trial court. *Id.* Further, where, as here, findings of fact and conclusions of law are not requested or filed, we "imply all facts necessary to support the trial court's judgment that are supported by the evidence and must affirm the trial court's judgment if it can be upheld on any legal theory supported by the evidence." *Aubrey v. Aubrey*, 523 S.W.3d 299, 309 (Tex. App.—Dallas 2017, no pet.) (quoting *Rossmann v. Bishop Colo. Retail Plaza, L.P.*, 455 S.W.3d 797, 808 (Tex. App.—Dallas 2015, pet. denied)); (citing *Weisfield v. Tex. Land Fin. Co.*, 162 S.W.3d 379, 381 (Tex. App.—Dallas 2005, no pet.)).

As to the first prong, Carroll's original petition asserted I.Q. Data's actions amounted to violations of the DCPA and the DTPA, fraudulent misrepresentation, fraud, and intentional infliction of emotional distress. However, she did not provide any details regarding what those actions were, instead asserting they were "so egregious that there isn't enough space here to explain further." In her third amended petition, which was filed after the hearing on I.Q. Data's motion, Carroll made more specific allegations, which we address individually, along with the evidence in the record.

Carroll alleged I.Q. Data violated the DCPA by negatively impacting Carroll's credit despite having "material facts and documentation that would not allow the item in dispute to be reported by law." Carroll cited section 392.202 of the finance code, which permits an individual who disputes the accuracy of an item on a debt collector's file to "notify in writing" the debt collector of the inaccuracy

–13–

and sets forth the debt collector's corresponding obligations. *See* TEX. FIN. CODE § 392.202(a), (b). I.Q. Data provided evidence attached to its motion of the notice it received via fax from Carroll. The first page of the fax directed I.Q. Data to "remove this debt from your database and cease and desist all reporting, calls or anything else related to this debt." The second page was a copy of the statement of claim Carroll had filed in the small claim court of Dallas County on July 5, 2022, asserting her claim against Fountain for failure to make certain repairs on the property and claiming damages of $20,000. I.Q. Data attached copies of internal records showing that its representative had "changed the credit reporting to indicate the disputed status" after having "received a dispute from the consumer verbally." Additionally, those internal records indicate I.Q. Data had "received a dispute in writing." Section 392.202 requires a third-party debt collector to then make a written record of the dispute and initiate an investigation of the dispute. *See* FIN. § 392.202(a). I.Q. Data's representative's records indicate such an investigation was conducted, the debt confirmed, and same communicated to Carroll when Carroll called I.Q. Data to determine whether they had received her fax communication. I.Q. *See id.* § 392.202(b), (e). Data also included evidence of its investigation in the form of its email communications with Fountain, in which Fountain's representative confirmed Carroll had filed suit in 2022, but that "we never did go to court" and confirmed the subject debt. We conclude the foregoing shows I.Q. Data complied with its obligations under the DCPA. *See* FIN. § 392.202(a), (b), (e). We conclude

the record evidence supports the trial court's implied finding that in reasonable probability, Carroll would not prevail on this DCPA claim against I.Q. Data.

Carroll alleged I.Q. Data violated the DTPA by continuing to pursue her for payment after receiving "documentation substantiating the Plaintiff[']s claims in the Plaintiff[']s dispute." She cited section 392.404 of the DCPA, which provides that a violation of the DCPA is a deceptive trade practice under the DTPA and actionable thereunder, as well as section 17.46(a) of the DTPA, which prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce" and declares them to be "subject to action by the consumer protection division." In her reply brief on appeal, Carroll argues I.Q. Data was in receipt of a residential tenant bond that exceeded the amount Fountain claimed she owed.[6] I.Q. Data attached a copy of the bond and the lease agreement to its motion and argued that the bond did not prevent Carroll from being liable for any unpaid rent owed to Fountain and instead obligated the surety of the bond to pay a claim on the bond. I.Q. Data further identified the provision in the lease agreement that authorized Fountain to report any unpaid amounts to credit agencies and authorized Fountain or I.Q. Data to attempt to collect the subject debt. Additionally, we note that the notes of I.Q. Data's representative indicate no outgoing calls to Carroll were made after she verbally disputed the subject debt. We conclude the record evidence

---

[6] Carroll does not allege or provide any evidence of when I.Q. Data received the bond, nor is there anything in the record to indicate when it was received. Nor do any of the notes provided as exhibits to I.Q. Data's motion indicate Carroll informed I.Q. Data of the existence of the bond.

–15–

supports the trial court's implied finding that in reasonable probability, Carroll would not prevail on this DTPA claim against I.Q. Data.

Carroll alleged I.Q. Data committed fraudulent misrepresentation by continuing to demand payment from her after being presented evidence the matter was being litigated in court and that she had obtained a surety bond to cover any unpaid rent, expenses, and repairs. The elements of a fraudulent misrepresentation claim are (1) a material misrepresentation (2) that was false (3) made with the knowledge that it was false or made recklessly without any knowledge of the truth and as a positive assertion (4) with the intention that it be acted upon by the other party (5) that the other party acted in reliance on the representation and (6) resulting injury. *Siltek Grp. Tex., LLC v. A&A Landscape & Irrigation LP*, No. 05-17-00042-CV, 2018 WL 3342691, at *3 (Tex. App.—Dallas July 9, 2018, no pet.) (mem. op.). I.Q. Data attached copies of internal records showing that its representative had "changed the credit reporting to indicate the disputed status" after having "received a dispute from the consumer verbally." Accordingly, we conclude the record evidence supports the trial court's implied finding that in reasonable probability, Carroll would not prevail on this claim of fraudulent misrepresentation against I.Q. Data.

Finally, Carroll alleged I.Q. Data had committed intentional infliction of emotional distress by purposefully and wrongfully reporting "negative debt on Carroll's three credit profiles negatively impacting [Carroll's] credit rating and

ability to obtain new credit" to pay for scheduled surgeries and other necessary expenses after losing her job. She also complained of I.Q. Data's "refusal to remove the erroneous debt," which she alleged prevented her from financing a new vehicle or supporting herself financial while disabled. A claim for intentional infliction of emotional distress has four elements: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Long v. Long*, 681 S.W.3d 805, 817 (Tex. App.—Dallas 2023, no pet.) (citing *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017)). The record does not contain any evidence or allegation of whether I.Q. Data was aware of the residential tenant bond when it reported the subject debt to the credit agencies. Therefore, even assuming, without deciding, Carroll's allegations met the last three elements, we cannot conclude they raise any inference that I.Q. Data acted intentionally or recklessly. Accordingly, we conclude the record evidence supports the trial court's implied finding that in reasonable probability, Carroll would not prevail on this claim of intentional infliction of emotional distress against I.Q. Data.

In summary, we conclude the record evidence supports the trial court's finding that I.Q. Data satisfied the first prong. We now address whether the record evidence supports the trial court's finding that I.Q. Data met its burden to show Carroll has a history of pro se litigation covered by the statute. *See* CIV. PRAC. & REM. § 11.054(1).

I.Q. Data filed its vexatious-litigant motion on September 28, 2023, and attached to that motion evidence of the several cases brought by Carroll pro se, including the following five cases determined adversely to Carroll or determined to be frivolous or groundless in the immediately preceding seven-year period:

1. *Carroll v. CC Maple, LLC*, No. 05-22-01357-CV, 2024 WL 725501, at *2 (Tex. App.—Dallas Feb. 22, 2024, no pet.) (mem. op.) (affirming judgment against Carroll).

2. *Carroll v. J. P. Morgan Chase Bank*, No. 02-19-00014-CV, 2019 WL 490128, at *1 (Tex. App.—Fort Worth Feb. 7, 2019, no pet.) (mem. op.) (dismissing Carroll's appeal of summary judgment granted against her after concluding her notice of appeal was untimely).

3. *Carroll v. European Service Center, Inc.*, Trial Court Cause No. CC-20-01206-D (County Court at Law No. 4, Dallas County, Texas, Aug. 26, 2021) (granting no-evidence summary judgment against Carroll).

4. *Carroll v. Metro Office Equip., Inc.*, Trial Court Cause No. 2021-007202-3 (County Court at Law No. 3, Tarrant County, Texas, Mar. 3, 2022).  In an appeal from that order, the appellate court noted that the noting trial court granted dismissal of Carroll's claims pursuant to Rule 91a, which provides for dismissal of baseless causes of action.  *See* No. 02-22-00087-CV, 2022 WL 1682156, at *1 (Tex. App.—Fort Worth May 26, 2022, no pet.) (mem. op.) (citing TEX. R. CIV. P. 91a).[7]

5. *Carroll v. State Farm Mut. Auto. Ins. Co.*, No. 4:18-CV-458-A, (N.D. Tex. Sept. 14, 2018) (dismissed all but breach-of-contract claim for failure to plead any facts upon which a plausible claim to relief could be granted and later dismissed her remaining claim for failure to amend her complaint to specifically state the components of the damages she sought to recover).

Carroll asserts the first decision in *Carroll v. CC Maple, LLC* is not final and that she has filed a petition for writ of certiorari that is still pending; however, the record contains no evidence to support her assertion.  Moreover, Carroll did not file

---

[7] Carroll denies she was a party in *Carroll v. Metro Office Equip., Inc.*; but she provides no evidence to controvert that of I.Q. Data's, which lists her as one of the plaintiffs in the suit.

any petition for review with the Texas Supreme Court, and in order to seek a petition for writ of certiorari from the United States Supreme Court, the petition must be filed after entry of a judgment or order denying discretionary review from "a state court of last resort." *See* U.S. SUP. CT. R. 13.

We conclude the record evidence supports the trial court's implied finding that I.Q. Data showed the second prong, that Carroll has a history of pro se litigation covered by the statute. Accordingly, we overrule Carroll's second issue.

## CONCLUSION

We affirm the trial court's judgment.

240041f.p05

/Nancy E. Kennedy/
NANCY KENNEDY
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

CHARLOTTE CARROLL,
Appellant

No. 05-24-00041-CV     V.

I.Q. DATA INTERNATIONAL,
INC., Appellee

On Appeal from the County Court at
Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-23-06070-
B.
Opinion delivered by Justice
Kennedy. Justices Molberg and
Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee I.Q. DATA INTERNATIONAL, INC. recover its costs of this appeal from appellant CHARLOTTE CARROLL.

Judgment entered this 10th day of December, 2024.