

# NUMBER 13-24-00207-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

JODANIEL REYNA,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

## ON APPEAL FROM THE 94TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

## OPINION

**Before Justices Silva, Cron, and Fonseca**
**Opinion by Justice Silva**

Appellant JoDaniel Reyna appeals his conviction for aggravated assault of a public servant, a first-degree felony for which he was sentenced to twenty-eight years' imprisonment. *See* TEX. PENAL CODE § 22.02(b)(2)(B). By three issues, which we re-organize and renumber to two, Reyna argues the trial court abused its discretion when it denied admission of certain evidence and his motion for new trial. We affirm.

## I.    BACKGROUND

Reyna was indicted for aggravated assault of a public servant, Count One, and attempted capital murder of a peace officer, Count Two, both first-degree felonies. *See id.* §§ 15.01(e), 19.02(b)(1), 19.03(a)(1), 22.02(b)(2)(B). The cause proceeded to a jury trial, and the following evidence was adduced:

On September 29, 2022, Charlie Hatch worked as a cashier at a Stripes convenient store in Corpus Christi. Around 3:30 a.m., Hatch was by himself when Reyna and his brother Pablo Reyna[1] walked into the store. They asked for a "fix-a-flat" and walked around the store but did not purchase anything. Hatch became nervous from the brothers' demeanor and thought they were attempting to commit a "beer run." After both brothers exited the store, Hatch locked the store's glass entrance door. The brothers became angry and kicked the glass door, causing it to crack, which was depicted in the store's surveillance video that was admitted into evidence. Hatch then called emergency services.

Lieutenant David Saldana of the Corpus Christi Police Department (CCPD) drove to the scene. Upon arrival, he parked at the Stripes parking lot and exited his vehicle. He observed a black vehicle and a grey vehicle in the parking lot, as well as Pablo standing near the cracked glass door. Saldana commanded Pablo to get on the ground. He then told the black vehicle's driver not to leave while Reyna walked towards him from said vehicle. Reyna had his hands up and told Saldana to search him. Saldana then grabbed the back of Reyna's coat with his right hand, in which he also held a flashlight, and the black vehicle drove off. Saldana radioed the black vehicle's description and license plate

---

[1] We hereinafter refer to Pablo Reyna by his first name to avoid confusion.

number to dispatch and placed Reyna in front of him. Pablo then walked towards Saldana, waving his right finger towards him and gesturing towards the store with his left arm. Saldana testified that Reyna "tens[ed] up in the shoulder, and . . . his hips dip[ped] a little bit" in reaction to something Saldana had said. Saldana then reached to grab Pablo with his left hand but Pablo pulled away. According to Saldana, Reyna began punching him and Saldana then pushed both brothers towards his police unit. A fight ensued.

The store's surveillance video depicting the fight was admitted into evidence without objection. Saldana testified that he first tried to hold onto the brothers while waiting for back up to arrive. However, as the fight escalated, Saldana let go of Reyna and hit Pablo with his flashlight in an attempt to subdue him. During the scuffle, Reyna yelled "[expletive], get the gun" and grabbed the handle of Saldana's belt-holstered firearm. According to Saldana, Reyna was unsuccessful in removing the firearm but "pulled[,] yanked[,] and twisted [him] around," which caused Saldana's body camera to dislodge from his person. Saldana and Pablo tumbled to the ground. While on the ground, Saldana got on top of Pablo and struck him again with his flashlight. Reyna then caught Saldana's arm, stripped him of the flashlight, then "start[ed] to give [Saldana] everything he's got with [the flashlight]." After striking Saldana's head a few times, Reyna threw the flashlight to the ground. Saldana ordered Reyna to get on the ground and he complied. Reyna then stood back up as CCPD Officer Andres Lopez arrived at the scene in his police unit. Lopez took Reyna into custody. Subsequently, another CCPD officer took Pablo into custody.

Video footage from Saldana's and Lopez's body worn cameras and their respective police unit's dashboard cameras were admitted into evidence without objection. Photos and medical records admitted into evidence demonstrated that Saldana suffered

3

"traumatic injury" to his head, including a laceration and contusions. While being processed at the city detention center following his arrest, Reyna admitted that he tried to grab Saldana's firearm but hit him with the flashlight instead.

During trial, after the State rested, Reyna moved for a directed verdict on both counts outside the presence of the jury. The trial court denied the motion and the parties subsequently provided closing arguments. During the State's rebuttal closing arguments, the following exchange occurred:

| | |
|---|---|
| [Prosecutor]: | Folks, you're the law, at this point, you're the law and you've got to make a decision as to whether you're going to say, well, okay. Well, okay, so if the officer survived, we'll let this thing go, you know, there might be self-defense. Protect your officers, please. They have a dangerous job, a thankless job, and they're protecting the community. They're protecting you and they're protecting Charlie Hatch. You've got to send a message that we can't tolerate this, we can't, especially now with all these people coming across the border, all these young kids coming in who are thugs. We can't have this. Tell the folks— |
| [Defense Counsel]: | Your Honor, may we approach? |
| THE COURT: | Yes. |
| | (The following bench conference is held.) |
| [Defense Counsel]: | Your Honor, I believe that's an improper argument and we're objecting to it on the comment about the border— |
| THE COURT: | That's sustained. |
| [Defense Counsel]: | I'd ask you to give the jury instruction to disregard that portion. |
| | (End of bench conference.) |
| THE COURT: | All right. The jury will disregard the comment about |

4

the border.

The prosecutor then continued and finished his closing arguments.

The jury deliberated over two days. On the first day, the jury sent two notes to the trial court requesting videos admitted into evidence. On the second day, the jury sent a third note indicating that they could not reach a unanimous decision with respect to either count. Reyna then moved for mistrial, which was denied by the trial court. The trial court sent the jury a note telling them to continue to deliberate. Later, the jury sent out a note stating, "Can not come to unanimous decision on [a]ttempted murder charge—10-2—[J]urors will not vote guilty on this charge." Reyna moved for mistrial on Count 2. The trial court then informed the parties that it was going to provide the jury an *Allen* charge. *See Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006) ("An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked. It reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve." (citing *Allen v. United States*, 164 U.S. 492, 501 (1896)). The following exchange occurred:

[Defense Counsel]: For the record, we are objecting to the [*Allen*] Charge. We are asking for a mistrial. The Judge has denied that request. And to be clear, no one—no party, nor has the Judge asked for the split of the jurors, and the note does not indicate when—

THE COURT: Well, it does on this one.

[Defense Counsel]: Well, the note indicates a ten-two split but does not indicate which is the ten and which is the two. Our objection to the [*Allen*] Charge would be that the [*Allen*] Charge would implicitly—although it is

5

clearly not the wish of the Court or the intention of the Court to coerce either side, because we know the split, there is—it is—

THE COURT: It is ten-two.

[Defense Counsel]: —implicitly coerce it for the minority jurors. So that would be our objection.

THE COURT: Okay. So what I am going to do is I am going to bring them in and I am going to read them this instruction.

[Defense Counsel]: Yes, sir.

THE COURT: While she's doing that, let's go into chambers.

(In chambers conference, off the record.)

(Thereafter, the following occurred.)

(Outside presence of the jury.)

THE COURT: All right. We're doing something different. All right. Let's do our bench conference here. Okay. We've already talked about Note No. 3.

. . . .

[Defense Counsel]: At this time, the Defense is moving for a mistrial on Count No. 2. As mentioned earlier, the split is—the numerical split is known by all the parties and the Court, although, we are unaware of—

THE COURT: —the direction.

[Defense Counsel]: —the direction of the split. I have moved for a mistrial on the attempted capital murder charge and the State seems to be in agreement. I will certainly let them speak for themselves.

[Prosecutor]: I don't object, Judge.

THE COURT: Okay.

[Prosecutor]: And just as long as the Court just tells them just

6

| | please deliberate on Count 1 only and not include anything about [Count] 2. |
|---|---|
| THE COURT: | Okay. Then I'm going to grant your motion for mistrial as to Count 2 only. |
| [Defense Counsel]: | Yes, sir. |
| THE COURT: | As to Count 1, I'm going to put "Please continue to deliberate on Count 1 only." |
| [Defense Counsel]: | Yes, sir. |

The jury continued deliberations until they unanimously found Reyna guilty of aggravated assault of a public servant. The parties each presented a single witness during the punishment phase of trial, which was tried to the bench. After the parties provided closing arguments on punishment, the trial court sentenced Reyna to twenty-eight years' imprisonment. Subsequently, the State filed a motion to dismiss Count Two and the trial court granted the State's motion.

Reyna timely filed a motion for new trial, by which he asserted two grounds: (1) the jury "manipulated the evidence" and was provided unrequested evidence; and (2) the State made inflammatory race-based statements during its closing argument and "loudly beat" a flashlight that was admitted into evidence against the podium in the courtroom. An affidavit by Reyna's counsel's paralegal was attached to his motion for new trial. The State subsequently filed a response. Thereafter, the trial court signed its order denying Reyna's motion for new trial. This appeal followed.

## II.     EVIDENTIARY RULING

In his first issue, Reyna argues that the trial court abused its discretion when it denied admission of evidence of "prior bad acts of the alleged victim, the arresting officer."

7

## A. Standard of Review and Applicable Law

We review a trial court's evidentiary rulings for abuse of discretion. *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021). We may uphold a trial court's ruling on the admission of evidence if the ruling is proper under any legal theory or basis applicable to the case. *See Najar v. State*, 618 S.W.3d 366, 373 (Tex. Crim. App. 2021).

An objection must be made timely with sufficient specificity to apprise the trial court of the complaint and basis for the objection, and the party making the objection must obtain a ruling on that objection or object to the lack of a ruling. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004). A motion in limine is a preliminary matter that normally preserves nothing for appellate review. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008). "For error to be preserved with regard to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial." *Id.*

Under Rule 401, evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. TEX. R. EVID. 401. However, as pertinent to this case, evidence of other crimes, wrongs, or acts, even if relevant, is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but may "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(1)–(2). "The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (citing cases). "Rule 404(b) is a rule of inclusion rather

8

than exclusion." *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* The proponent of extraneous offense evidence

> need not 'stuff' a given set of facts into one of the laundry-list exceptions set out in Rule 404(b), but he must be able to explain to the trial court, and to the opponent, the logical and legal rationales that support its admission on a basis other than 'bad character' or propensity purpose.

*Id.* In addition, Rule 405(b) permits evidence of specific acts as character evidence only when the "person's character or character trait is an essential element of a charge, claim, or defense." TEX. R. EVID. 405(b).

Even if extraneous offense evidence is relevant, and the purpose for which it is being offered is permissible under Rule 404(b), it may still be excluded by the trial court under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403; *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (citing *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (op. on reh')).

**B.    Analysis**

On appeal, Reyna complains that the trial court erred when it denied admission of disciplinary records concerning Saldana from 2010. These records indicate that Saldana was suspended ten working hours for violating several CCPD rules in relation to the arrest of Billy Knight. According to the records, Knight was arrested and placed inside a police unit. While inside the police unit, Knight kicked at the police unit's doors and windows, and he eventually kicked open a previously closed door while yelling obscenities at officers. Saldana "became upset and jumped into the rear of the [p]olice unit and

onto . . .Knight," who was handcuffed. Lieutenant M. Alanis[2] then "took a hold of . . . Saldana's shoulders and walked him away from the unit which contained . . . Knight while asking . . . Saldana what he was doing in an attempt to diffuse the situation." According to the records, Saldana yelled at Alanis to get his hands off him and attempted to break away from Alanis with physical force.

The record demonstrates that on March 5, 2024, after the jury was selected and sworn and Reyna pleaded "not guilty," the trial court conducted a hearing outside the presence of the jury regarding the State's motion in limine.[3] During the hearing, the parties were discussing the admissibility of the subject evidence when the trial court stated, "[C]orrect me if I'm wrong, I mean, basically, you're trying to say [Saldana's] a violent person and that he's acting in conformity with this behavior, which I think the rules prohibit." In response, Reyna's defense counsel argued he did not intend to use the disciplinary records "as character and conformity therewith, but it is part of [Reyna's] defense that this is—part of the defense of others is that the officer was acting unlawfully and violently and was purposely taking actions that would lead to serious bodily injury and/or death." The trial court granted the State's motion in limine but made no ruling on the admission of the evidence.

The guilt-innocence phase of trial commenced the next day. After Saldana testified, the trial court and the parties further discussed the admissibility of the disciplinary records

---

[2] The record contains two different spellings of this person's last name: (1) Alanis, and (2) Alaniz. We use the first spelling in this opinion.

[3] The State's motion in limine requested that the trial court instruct Reyna, his defense counsel, and any defense witnesses not to "offer, introduce, mention, or otherwise refer to," among other things, "[a]ny specific instances of any of the State's witnesses' and the victim's alleged bad acts or bad acts, specific instances of conduct or alleged specific instances of conduct, that are not admissible to prove character of a person in order to show actions in conformity therewith and/or to attack the credibility of said witness."

outside the presence of the jury. Reyna argued that the excluded evidence was admissible "[a]s a matter of [Rule] 404(b) to show motive, state of mind, and intent." He also suggested that this prior bad act was modus operandi evidence "which is kind of [Saldana's] mode of operating at the scene of what he perceives to be a crime." According to Reyna, Saldana's motive "was to start a fight with him in that moment" and he "states his intention just like he did with the person in the back seat of his squad car." He further argued that it was Saldana's "intention" to be "the first aggressor." The trial court then orally denied admission of the evidence, but informed Reyna that he was permitted to make a bill of exception. Reyna then requested permission to make a "last ditch effort," and the following exchange occurred:

| | |
|---|---|
| [Defense Counsel]: | It does go to his intent in this specific situation because he was intending—his intention was to start a fight, not to make an arrest. The gentleman in the previous—in the previous case had already been arrested. He was in handcuffs and he was in the back of his vehicle and . . . Saldana's intention was to hurt that guy and fight him, just like his intention in this case. That is part of our defense, Your Honor. |
| THE COURT: | I'm with you, but it's also 14 years ago and the . . . time gap makes a difference, much like the time gap would be in a 609 analysis and so you know, I believe that's an issue as well. So, I hear what you're saying, I understand why you're . . . trying to do it. Sometimes [Rule] 404(b) character, and it says . . . one thing and then it says up here, and it's sometimes a fine line, okay, it is, I get it. |
| [Defense Counsel]: | I would also argue that under *Barron v. State*, which is one of the cases that [defense counsel] proffered to the Court. |
| THE COURT: | I've got it. |

| | |
|---|---|
| [Defense Counsel]: | It does include language to the effect that [Rule] 404(b) . . . is meant to be an inclusive. |
| THE COURT: | It's a rule of inclusion, not of exclusion. |
| [Defense Counsel]: | Yes, sir. |
| THE COURT: | I agree with that. Okay. No, I agree with that. |
| [Defense Counsel]: | And I think it also establishes a pattern and practice by the officer. |
| THE COURT: | But that's not . . . one of the things listed. |
| [Defense Counsel]: | In [Rule] 404(b). |
| THE COURT: | Your thing is intent and motive. Those are the—I mean, because identity is not an issue here, right? |
| [Defense Counsel]: | Identity is not an issue. |
| THE COURT: | The rest of them aren't in issue, it's just the ones you mentioned. |
| [Prosecutor]: | Yeah, and modus operandi I think has to be more specific and more consistent with the— |
| THE COURT: | Absolutely. The guy would go to a liquor store, he would wear a ski mask, he'd wear a red shirt and we had five of those in two days. That's *modus operandi* and he used a . . . short barrel shotgun in each of the robberies, that's . . . classic *modus operandi*. |
| [Prosecutor]: | If I could add one last thing, Your Honor? |
| THE COURT: | Yes, sir. |
| [Prosecutor]: | And this is normally done by the Defense, but I think the State could use this as well. We would also say under [Rule] 403, that even if there's some slim sliver of probative value, it's greatly outweighed by the prejudicial nature of something that happened 14 years ago and that involved an extraneous altercation. |

12

| | |
|---|---|
| [Defense Counsel]: | And I think that in saying that, he recognizes the probative value of it. |
| THE COURT: | But it has to be substantially more prejudicial than probative. |
| [Prosecutor]: | Exactly. And I'm not conceding, but I am saying, I mean, this is belts and suspenders. I'm saying even if this is substantially more prejudicial under the circumstances. |
| THE COURT: | Okay. . . . |
| [Defense Counsel]: | Your Honor, I have a clean copy of those records that we were provided, the same redacted one, it's a clean copy. |
| THE COURT: | What I want to put in is—because it is the only one that I'm considering—is the— |
| [Defense Counsel]: | The— |
| THE COURT: | Yeah, I know what you're talking about the [K]night thing, right? |
| [Defense Counsel]: | Yeah. |
| THE COURT: | And then the altercation with Alani[s is] because it's all one kind of one thing? |
| [Defense Counsel]: | That's correct. |
| THE COURT: | That's the one you want to put in. Okay. Then, I guess, you can make a copy of it, and then we can put it into the record. |
| [Defense Counsel]: | Yeah. Can I bring a clean copy in the morning— |
| THE COURT: | Yeah, bring a clean copy in the morning, I'll let you put it in for purposes of appeal. |
| [Defense Counsel]: | Yes, sir. |

After both parties rested during the guilt-innocence phase, the trial court permitted Reyna to present a formal bill of exception outside the presence of the jury. The following

13

exchange occurred:

| | |
|---|---|
| THE COURT: | Okay. Go ahead and make your bill. Go ahead. |
| [Defense Counsel]: | Okay. |
| THE COURT: | I mean, we've kind of already made it, but. |
| [Defense Counsel]: | We have basically argued the evidentiary basis back and forth for whether or not these records would be admissible. I am referring specifically to records regarding a previous incident in which the complainant in this case, [Saldana] was—received disciplinary action and a suspension for climbing into the back seat of a squad car and assaulting a handcuffed person who was to be arrested. During that same incident, he had to be removed from the back seat of that squad car by a Lieutenant Alani[s]. When Lieutenant Alani[s] removed him from the car, according to the records, Saldana pulled back violently and shouted at him to take your hands off of me which is consistent with the actions of Pablo . . . in this case. For the purposes of the appellate record, we are submitting, under seal, those records which I am providing to the Court now. |
| THE COURT: | Okay. And the Defense wanted to get into this incident based upon [Rule] 404(b), motive and intent. |
| [Defense Counsel]: | Yes, sir. |
| THE COURT: | Okay. |
| [Defense Counsel]: | We had made other arguments prior to that, but by the end of it, that was what we were will relying upon. |

In his brief, Reyna asserts multiple bases which he claims supports admission of the excluded evidence, including the Confrontation Clause[4] and Texas Rules of Evidence

---

[4] Reyna specifically argues that "[t]he Confrontation Clause demands that evidence of" prior instances of conduct "be admissible, despite Rule 608(b)'s proscription against admitting specific instances of conduct." He further argues that the Confrontation Clause "requires us to carve out a special exception

405(b), 412, and 613(b). *See* U.S. CONST. amend. VI; TEX. R. EVID. 405(b), 412, 613(b). To preserve these evidentiary complaints for appellate review, Reyna was required not only to make an offer of proof or bill of exception and obtain a ruling, which he did, but also to state the grounds for the ruling he desired "with sufficient specificity to make the trial court aware of the complaint." *See* TEX. R. APP. P. 33.1(a)(1)(A), 33.2; TEX. R. EVID. 103(a)(2); *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). "[I]t is not enough to tell the judge that evidence is admissible. The proponent [of the evidence], if he is the losing party on appeal, must have told the judge why the evidence was admissible." *Reyna*, 168 S.W.3d at 177; *see also Martinez v. State*, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002) (recognizing that "the party complaining on appeal . . . about a trial court's admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question" (citation modified)). Here, nothing in the record demonstrates that Reyna urged the trial court that the excluded evidence was admissible under the Confrontation Clause or Rules 412 and 613(b). *See* U.S. CONST. amend. VI; TEX. R. EVID. 412, 613(b). Therefore, Reyna has waived his complaints on appeal regarding the admissibility of the evidence under those grounds. *See Reyna*, 168 S.W.3d at 177; *Martinez*, 91 S.W.3d at 335–36; *Clark v. State*, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994) ("As appellant did not sufficiently clearly expressly offer the evidence for the purpose which he now claims on appeal, such is not a basis for complaint on appeal."); *see also Villegas v. State*, No. 01-17-00109-CR, 2019

---

to the Rules of Evidence. Rule 613(b) presumes the right to admit such evidence because it deals with how the witness may be examined concerning bias or interest and when extrinsic evidence of that bias or interest may be admitted."

WL 2292982, at *4 (Tex. App.—Houston [1st. Dist.] May 30, 2019 no pet.) (mem. op., not designated for publication).

Reyna also argues that he should have been allowed to use the excluded evidence "to explain [Saldana's] mental state and how [Saldana] was currently suffering from [Post Traumatic Stress Disorder] at the time of the incident, and how [Saldana's] pre-existing mental health condition had contributed to [Saldana] being quick to engage in violence and abandon his training of de-escalation techniques." However, Reyna did not present this contention or anything similar to it as a basis for admissibility of the excluded evidence to the trial court. Thus, Reyna also waived this complaint on appeal. *See Reyna*, 168 S.W.3d at 177; *Martinez*, 91 S.W.3d at 335–36; *Clark*, 881 S.W.2d at 694.

Regarding Rule 405(b), Reyna argues in his brief that he should have been "allowed to use the prior instances of conduct because . . . Saldana's character was at issue in the determination of credibility and the [j]ury's determination if [Reyna] has the right to use self-defense." Even assuming Reyna preserved this argument, we disagree. The Texas Court of Criminal Appeals has held that "[p]roving who was the aggressor in a claim for self-defense is not dependent exclusively upon the character of the victim," and that "a victim's character is not an essential element of a claim of self-defense." *Tate v. State*, 981 S.W.2d 189, 192 n.5, 193 (Tex. Crim. App. 1998).[5] Accordingly, we overrule Reyna's first issue.

---

[5] We note that the jury charge provided an instruction on the law regarding deadly force in defense of person, not self-defense. *See* TEX. PENAL CODE §§ 9.31–.32. Reyna raises no issue on appeal concerning the jury charge.

We also note that, despite framing his first issue as concerning "prior bad acts," Reyna does not assert, as he did at trial, that the excluded evidence was admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" under Rule 404(b). *See* TEX. R. EVID. 404(b).

### III.     MOTION FOR NEW TRIAL

In his second issue, Reyna argues that the trial court committed reversible error when it denied his motion for new trial.

### A.     Standard of Review and Applicable Law

A trial court's denial of a motion for new trial is reviewed under an abuse of discretion standard. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (citing *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Id.* "A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Id.* (citing *Lewis*, 911 S.W.2d at 7).

### B.     Analysis

In arguing that the trial court reversibly erred in denying his motion for new trial, Reyna raises two sub-issues. In his first sub-issue, Reyna argues the jury "manipulated evidence" and was provided unrequested evidence during their deliberations. In his second sub-issue, Reyna argues that the prosecutor's comment concerning the border during closing statements was a race-based statement that "was calculated to deprive [him] of a fair trial and was clearly so inflammatory [such] that it could not be cured by the instruction given by the trial court." Reyna relies on the affidavit attached to his motion for new trial as evidence supporting these sub-issues.

An appellant bears the burden to bring forward an appellate record that enables the appellate court to determine whether the appellant's complaints constitute reversible error. *See Enter. Leasing of Hou. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (per

17

curiam); *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (stating that burden is on appellant to present sufficient record to show error requiring reversal); *see also Narvaez v. State*, No. 09-21-00331-CR, 2022 WL 16828750, at *3 n.2 (Tex. App.—Beaumont Nov. 9, 2022, no pet.) (first citing *Prezelski,* 782 S.W.2d at 843; and then citing *Greenwood v. State*, 823 S.W.2d 660, 661 (Tex. Crim. App. 1992)). If an appellant desires a reporter's record on appeal, he must request the court reporter to prepare the record and designate the exhibits and the portions of the proceedings to be included and filed with the trial court clerk. *See* TEX. R. APP. P. 34.6(b). When the issues on appeal necessarily involve consideration of evidence omitted from the appellate record, we must presume the missing evidence supports the trial court's ruling. *See Barrios*, 156 S.W.3d at 550; *Willms v. Americas Tire Co.*, 190 S.W.3d 796, 806 (Tex. App.—Dallas 2006, pet. denied) (presuming evidence sufficient to support trial court's order when appellant failed to request reporter's record). "Issues depending on the state of the evidence cannot be reviewed without a complete record, including the reporter's record." *Palla v. Bio-One, Inc.*, 424 S.W.3d 722, 727 (Tex. App.—Dallas 2014, no pet.) (citing *Favaloro v. Comm'n for Lawyer Discipline*, 994 S.W.2d 815, 820–21 (Tex. App.—Dallas 1999, pet. struck)). "If the appellant fails to bring forward a complete record, the court will conclude appellant has waived the points of error dependent on the state of the evidence." *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 670 (Tex. App.—Dallas 2012, pet. denied) (citing *Favaloro*, 994 S.W.2d at 821).

Here, the clerk's record contains the trial court's case summary sheet, which indicates there was a hearing on Reyna's motion for new trial on May 29, 2024, the same day the trial court entered its order denying the motion. Furthermore, the trial court's order

18

contains the following statement: "ON THIS THE 29 day of May, 2024, *came to be heard* the Defendant's Motion for New Trial, and premises considered it is: . . . ." (emphasis added). Underneath that statement, the trial court hand-drew a circle around the word "DENIED." The reporter's record does not contain a transcript of a hearing on his motion for new trial. We note that the clerk's record demonstrates that Reyna formally requested the official court reporter to "transcribe all matters on the record." *See* Tex. R. App. P. 34.6(b)(1). However, this request was filed on April 26, 2024, a month before the hearing on Reyna's motion for new trial. Reyna did not file an amended request specifically requesting a transcript of the hearing on his motion for new trial nor did he request an abatement of this appeal in order to obtain a copy of the transcript for this hearing. *See id.* (providing that "[a] request to the court reporter . . . must . . . designate the portions of the proceedings to be included" in the reporter's record).[6]

"Allegations made in a motion for new trial or supporting affidavit are not self-proving and must be offered into evidence at a hearing." *Arriaga v. State*, 335 S.W.3d 331, 337 n.1 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009)). The appellate record contains no indication that the affidavit Reyna relies on—or any other evidence—was presented to and admitted by the trial court at the motion for new trial hearing. *See id.* Moreover, we conclude that a reporter's record is necessary for review of Reyna's second issue concerning the trial court's denial of his motion for new trial. *See Holden*, 201 S.W.3d at 763; *Arriaga*, 335 S.W.3d at 337; *see also Palla*, 424 S.W.3d at 727. Because Reyna failed to provide this

---

[6] Where only a partial reporter's record has been designated, we must presume the partial record constitutes the entire record for purposes of reviewing the stated issues. Tex. R. App. P. 34.6(c)(4). Based on our review of the appellate record, we conclude the rules on partial records do not apply to this case.

19

Court with a reporter's record of the hearing on his motion for new trial, we must presume that the missing record supports the trial court's denial of Reyna's motion for new trial. *See Barrios*, 156 S.W.3d at 550; *Willms*, 190 S.W.3d at 806; *see also Narvaez*, 2022 WL 16828750, at *3 n.2. Furthermore, we conclude that Reyna has waived his sub-issues by failing to bring forth a complete record because disposition of said sub-issues are dependent on the state of the evidence. *See Bullock*, 360 S.W.3d at 670.

We observe that, unlike his first sub-issue, Reyna's second sub-issue could be characterized as not involving the consideration of evidence omitted from the appellate record. This is so because, though he references Jones's affidavit in addressing his second sub-issue, he appears to mostly rely on record references that are within the appellate record. Nevertheless, even if his second sub-issue was not waived by Reyna's failure to bring forth a record, we conclude it is without merit.

Permissible jury argument falls into four distinct and limited categories: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Improper closing arguments include references to facts not in evidence or incorrect statements of law. *Coleman v. State*, 577 S.W.3d 623, 639 (Tex. App.—Fort Worth 2019, no pet.). Generally speaking, "[a]n instruction to disregard" is sufficient to cure error stemming from improper jury argument. *Bautista v. State*, 363 S.W.3d 259, 265 (Tex. App.—San Antonio 2012, no pet.). "When the trial court provides an instruction to disregard, the error is reversible only when the statements are 'extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused.'" *Young v. State*, 591 S.W.3d 579, 596 (Tex. App.—Austin 2019,

pet. ref'd). "Stated differently, to warrant a reversal, the error must inflame and prejudice the minds of the jury." *Id*. We examine the alleged improper argument in light of the facts adduced at trial and in the context of the entire argument. *Stahmann v. State*, 548 S.W.3d 46, 68 (Tex. App.—Corpus Christi–Edinburg 2018), *aff'd*, 602 S.W.3d 573 (Tex. Crim. App. 2020) (citing *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989)). It "is not enough that the prosecutors' remarks were undesirable or even universally condemned. . . . The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 180–81 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

The trial court sustained Reyna's objection to the following comment by the prosecutor: "You've got to send a message that we can't tolerate this, we can't, especially now with all these people coming across the border, all these young kids coming in who are thugs. We can't have this." The trial court also obliged Reyna's request for an instruction to disregard and promptly told the jury, "The jury will disregard the comment about the border." The complained-of comment was uttered during the prosecutor's plea for law enforcement, which is normally permissible in closing argument. *See Brown*, 270 S.W.3d at 570. While we do not disagree with the trial court's decision to sustain Reyna's objection, we disagree with Reyna's contention that the prosecutor's comment was calculated to deprive him of a fair trial and was so clearly inflammatory that it could not be cured by the trial court's instruction to disregard.

The prosecutor made a single reference to the border during closing arguments, most of which addressed the evidence and testimony adduced at trial. We find nothing in

21

the comment that was so extreme or inflammatory that the jury could not have been expected to disregard the comment as instructed by the trial court, nor do we find evidence in the record suggesting the jury failed to follow the trial court's instruction.[7] *See Young*, 591 S.W.3d at 596; *see also Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) ("[W]e generally presume that a jury will follow the judge's instructions."); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (holding that the presumption is refutable, "but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions"); *Griffin v. State*, 571 S.W.3d 404, 419 (Tex. App.—Houston [1st Dist.], 2019 pet. ref'd) (holding that the presumption is overcome where the statement at issue is "extremely inflammatory").

Furthermore, to the extent that the complained-of comment injected new and harmful facts or urged the jury to consider evidence not in the record, we conclude that it was not so extreme or inflammatory that an instruction to disregard would have had no curative effect. *See Young*, 591 S.W.3d at 596. In other words, we cannot conclude that the complained-of comment "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[8] *DeChristoforo*, 416 U.S. at 643. We overrule Reyna's second issue.

---

[7] In his brief, Reyna points to Jones's affidavit as evidence "show[ing] the shock and attitude of the jurors when they heard the racist comments." However, even assuming Jones's affidavit was properly before the trial court, it does not reference the complained-of comment. Instead, Jones stated in her affidavit that two female jurors were upset and offended by the prosecutor's comments concerning Reyna's mother "and how she was responsible for [Reyna's] behavior because she was a single parent."

[8] As part of his second sub-issue, Reyna complains that the prosecutor loudly banged the flashlight against the podium in the courtroom during closing statements. To the extent that Reyna contends this behavior was improper, we note that Reyna failed to raise any objection regarding this behavior or provide any case authorities supporting this contention on appeal. Therefore, we conclude Reyna has waived this issue through inadequate briefing. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Rubsamen v. Wackman*, 322 S.W.3d 745, 746 (Tex. App.—El Paso 2010, no pet.) (noting the burden is on the appellant

## IV. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
26th day of March, 2026.

---

"to discuss [his] assertions of error, and we have no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error").